THE STATE, EX REL. SWAIM, AUDITOR, ETC., *v.*
WINDLE, ET AL.

[No. 18,482.   Filed Jan. 25, 1901.   Rehearing denied June 19, 1901.]

COUNTIES.—*County Treasurer.*—*Loans to County.*—A contract entered
into by the county treasurer and the board of county commissioners,
whereby the former was authorized to furnish the county all money
for the payment of orders, bonds, and interest, when presented to
such treasurer for· payment, for which he should receive six per
cent. interest per annum, is in violation of §6548 Burns 1894, and
void as against public policy.  *pp. 648-654.*

SAME.—*County Treasurer.*—*Loans to County.*—In an action against
a county treasurer for money alleged to be due the county it was
shown that he retained $5,086.86 of the public funds which he
claimed was due him for interest on loans made to the county.  No
receipts were filed by him with the county auditor for loans received,
as required by §7991 Burns 1894, his bank balances were constantly
less than the balances shown to be in his hands by his own books,
and he was unable to explain from what source other than the
public funds he obtained the large amounts alleged to have been
loaned by him to the county.  *Held,* that the evidence showed that
the loans were made from the public funds.  *pp. 654, 655.*

From the Huntington Circuit Court.  *Reversed.*

*L. B. Milligan, O. W. Whitelock* and *S. E. Cook,* for appellant.

*J. B. Kenner* and *U. S. Lesh,* for appellees.

DOWLING, C. J.—This was an action on the official bond
of a county treasurer to recover moneys alleged to be due
from him.  The complaint was in three paragraphs, but as
no evidence was offered under the first, and as the third was
withdrawn, the second is the only one which need be con-
sidered.  After alleging the election of Windle as treasurer,
and the execution of his official bond, the breach of its con-
dition is thus stated: "That said Windle fraudulently en-
tered into a conspiracy with the members of the board of
commissioners of said county and Israel H. Heaston, then
auditor of said county, for the purpose of cheating and de-

frauding said county by making illegal allowances to said Windle, and, in pursuance of said conspiracy, said Windle presented the following claims before the board of commissioners of said county, for interest on funds he pretended he had loaned to said county:

Dec. 4, 1888, for interest........... $1,016.22
Dec. 24, 1888, for interest......:......   402.02
May 5, 1889, for interest........... 1,171.50
June 24, 1889, for interest.........   144.41
Sept. 23, 1889, for interest.........    61.59
Nov. 20, 1889, for interest.......:..   514.87
Dec. 25, 1889, for interest.........    54.66
June 23, 1890, for interest.........    44.46
Nov. 11, 1890, for interest......... 1,677.13

Making a total of............. $5,086.86

"But plaintiff says that said Windle had not loaned said county any money, and was not entitled to any interest, which was known to said board and said Heaston, but said board fraudulently allowed said illegal claims, and said Heaston fraudulently drew warrants on the treasury of said county in favor of said Windle for said claims, and said Windle paid said warrants to himself out of the funds of said county, and has converted the same to his own use." It is further alleged that Windle refused to return said moneys, although the same were demanded from him. The answer of the defendants below was a general denial.

The cause was tried by the court, and there was a finding and judgment in favor of the appellant for $331.21. Motion by the appellant for a new trial upon the grounds (1) that there was error in the assessment of the amount of the recovery, in that such assessment was too small; (2) that the finding was not sustained by sufficient evidence; and (3) that the finding was contrary to law.

The substantive charge in the complaint is that the appellee Windle wrongfully retained $5,086.86 of the county

funds upon the pretense that the said sum was due to him as interest on moneys loaned by him to the county during his term as treasurer. The allegations as to a conspiracy between the treasurer, the county board, and the auditor, may be treated as surplusage, as they add nothing to the strength of the complaint, and are unnecessary to the proper description of the cause of action.

The proof showed that the sum alleged in the complaint was held and retained by the appellee upon a claim that the same was due to him as interest on divers loans made by him to the county during his said term of office.

Can a county treasurer make such loans to the county, and collect interest upon them? It is clear that the statutes nowhere authorize such transactions. It is no part of the official duty of the treasurer to protect the credit of the county by such loans. When warrants are drawn by the auditor upon the treasurer, and there are no funds in the hands of the treasurer with which to pay them, it is his duty to indorse the warrants "Not paid for want of funds", after which time the sums named in the warrants bear legal interest. §7998 Burns 1894.

It is further provided by the same section of the statute that when there shall be funds to redeem such outstanding orders, notice of that fact shall be given by the treasurer by publication in a newspaper printed or circulated in the county, after which such interest shall cease.

It is made the duty of the treasurer to keep the commissioners and auditor informed when there is no money in the treasury, and, failing to do so, the treasurer is liable on his official bond for the amount of orders or warrants drawn during such failure, with interest thereon, to the person in whose favor every such order or warrant is drawn. If the auditor shall draw any warrant upon the treasurer, knowing there is no money in the treasury, he is liable on his official bond for the amount, with interest thereon, to the person to whom such order or warrant is made payable. §7923 Burns 1894.

It has been held in this State that a board of commissioners of a county has the incidental power to make temporary loans to meet temporary emergencies. *Miller* v. *Board, etc.,* 66 Ind. 162.

It is insisted on behalf of the appellees that the charges for interest made by the treasurer, Windle, were authorized and rendered legal by an order of the board, which is as follows: *"Whereas,* it appears that the county revenues and collection of gravel road taxes is insufficient to meet the payments of county orders, bonds, and interest, it is therefore *ordered* that the treasurer of said county be authorized to furnish said county with all money for the payment of said orders, bonds, and interest, when presented to said treasurer for collection; and for all money furnished said Huntington county by said treasurer he shall receive at a rate not to exceed six per cent. interest per annum."

This agreement is certainly an extraordinary one. The loans authorized by it are without definite limits as to amount; they are to be made at the pleasure of the treasurer; no time is fixed for the repayment of the money borrowed; nor is any authentic evidence of such loans provided for.

Such agreement seems to be directly in violation of §6548 Burns 1894, which declares that it shall be unlawful for any board of commissioners to allow any county, township, or other public officer, any sum of money out of a county treasury, except when the statutes confer the clear and unequivocal authority to do so. But, if it were not objectionable on this ground, such a contract is plainly against public policy. It makes it to the interest of the treasurer to collect as little of the public revenues as possible, so that he may lend to the county as large a sum as possible. It opens the door to fraud, and affords both inducement and opportunity to the officer to loan, for his own profit, the moneys in his hands belonging to one or more of the funds of the county, to supply the real or pretended deficiencies in others. It

makes the treasurer the private banker of the county, and gives him the exclusive right to negotiate loans to it without the knowledge or supervision of any other officer. It enables the treasurer to make enormous profits out of his office, and to add largely to the compensation for his services fixed by the statute. Under such a contract, there certainly would be a conflict between the duty and the interest of the officer, and extraordinary facilities for reaping personal advantage from his official position. 27 Am. & Eng. Ency. of Law (1st ed.) 194, and cases cited in note 4.

Ordinarily, a trustee may be reimbursed for advances made by him in good faith for the benefit of the estate, and interest may be allowed him. 27 Am. & Eng. Ency. of Law (1st ed.) 180, note 4. But as to the allowance of interest, this rule does not apply to a county officer, who is a mere collector and custodian of public revenues. In such case there is no estate requiring advances for its betterment or protection.

If loans or advances of money were actually made by the treasurer to the county, doubtless the principal sum loaned might be recovered upon the grounds stated in *Parker* v. *Board of Supervisors,* 106 N. Y. 392, 13 N. E. 308: "But in respect to such loans, if the money borrowed came to the use of the county and was actually applied in payment of its valid indebtedness, we are not prepared to say that there would be no remedy. The fact that the defendant is a county, forming one of the political divisions of the State and organized for public purposes, would not seem to be a sufficient reason for releasing it from the ordinary obligations of justice and equity, or for permitting it to retain the benefit of the loans, and at the same time repudiate any obligation for their payment. The contention that boards of supervisors have no inherent power to borrow money or to issue negotiable paper, accords with the general understanding and with the tenor of the adjudged cases, and the course of legislation which presupposes the necessity of express

legislative sanction, in order to justify the exercise of this authority." It is to be noted, however, that in the case just referred to, the loan was made to the county not by the treasurer, but by a stranger, and that the action was brought upon the obligation of the county executed by the treasurer to the lender.

The appellee Windle was an administrative officer of Huntington county. He sustained an important fiduciary relation to that county. In obtaining from the board a contract authorizing him to make loans to the county, and to charge the county with interest upon them, he placed himself in an antagonistic position to the county. By this arrangement, the treasurer, in his official character, undertook to act as the agent of the county as a borrower, while, at the same time, in his individual capacity, he acted as a lender, or loan broker, and became directly interested in the profits to be made out of the transaction. It cannot be conceived that the interests of a borrower and a lender should always be identical in the same transaction.

The general rule applicable to private fiduciaries, prohibiting them from taking advantage of their position to make profit for themselves out of the trust estate, should be strictly enforced against public officers, who are guilty of similar malfeasance. The protection of the public interests requires that no exceptions to this rule shall be allowed, nor any evasions tolerated. In the present case, the legal effect of the contract between the treasurer and the board may be thus expressed: In addition to the fees and salary allowed the treasurer by the statute, he shall have the privilege, during his term of office, of lending to the county from time to time all such sums of money as in his judgment may seem necessary to supply the deficiencies in the several county funds, and upon all such loans he shall receive interest at the rate of six *per centum per annum,* which shall be for his sole use and profit. The mere statement of the proposition carries its own condemnation with it. The

practical effect of this contract was to more than double the compensation of the treasurer as fixed by the statute. His salary, as allowed by law, §6461 Burns 1894, for two years amounted to $4,400. His claim for interest on supposed loans, for the same period, was $5,086.86.

We are of the opinion that the contract between the appellee Windle, as treasurer, and the board of commissioners, by which the treasurer was authorized to make loans to the county, and to charge interest upon them, was void as against public policy.

In considering the case thus far, we have assumed that the appellee Windle actually loaned to the county the sums mentioned in the complaint, and that the moneys so loaned were his own private funds. But if the agreement relied upon by the appellees were valid, the evidence is not sufficient to support the claim for interest on the part of the appellee. When it was shown by the appellant that the treasurer, Windle, had retained the sum of $5,086.86 of the public funds, a *prima facie* case was made by the appellant, and it devolved upon the appellees to show by a preponderance of the evidence that the alleged loans were actually made to the county by the treasurer.

Calling the sums retained "interest" did not prove that the treasurer had made loans to the county, or that he was entitled to retain any money on account of such loans. The statute required him to execute a receipt for each sum which came to his hands as a loan, and to file such receipt with the auditor. §7991 Burns 1894. No such receipts were produced. As far as the proof goes, nothing upon the books of the auditor indicated that any such loans were made. The bank balances of the treasurer were constantly less than the balances shown to be in his hands by his own books. He was unable to explain the discrepancy, nor could he tell where, or from what source, other than the public funds, he obtained the large amounts alleged to have been loaned by him to the county. Without examining the

evidence more in detail, it is sufficient to say that the conclusion from it is unavoidable, that Windle loaned the public funds to the county, and charged and collected interest upon such loans to the amount stated in the complaint. The motion for a new trial should have been sustained.

The judgment is reversed, with instructions to the Huntington Circuit Court to grant a new trial, and for further proceedings in accordance with this opinion.

JORDAN, J.—While, under the facts in this appeal, I concur in the result reached, still I do not profess to hold that in no case would a county treasurer be entitled to interest from the county for money loaned or advanced by him to it, in his individual capacity, or upon protested orders purchased and assigned to him.