## NOBLE ET AL. *v.* DAVISON.

[No. 21,927. Filed October 27, 1911. Rehearing denied January 12, 1912.]

1. MUNICIPAL CORPORATIONS.—*Expenditure of Funds Raised by Taxation.—Illegal Contract.—Rights of Taxpayer to Enjoin.*—A resident taxpayer of a municipal corporation may sue to enjoin an illegal act, involving the expenditure of funds raised by taxation, even when it appears on the face of the complaint that plaintiff's interest does not differ in kind from that of the public in general. p. 22.

2. MUNICIPAL CORPORATIONS.—*Expenditure of Funds Raised by Taxation.—Illegal Contract.—Suit by Taxpayer.—Demand.*—In a suit by a taxpayer to enjoin the payment of money by a school corporation on an illegal contract, a demand on such corporation for relief is not a condition precedent to plaintiff's right to bring the suit. p. 23.

3. APPEAL.—*Pleading.—Defective Complaint.—Amendment Deemed Made.*—In a suit by a taxpayer to enjoin the payment of money, by a school corporation on a contract for the installation of a heating plant, because of the interest of one of the members of the school board in such contract, where the complaint alleges the election of said member to the school board on June 6, 1910, and that he qualified as such on August 1, 1910, and that the contract was entered into June 25, 1910, and also alleges that said trustee "is the president" of the company to whom the contract was awarded, but does not specifically allege that he was president of the company when the contract was executed, and where it was proved at the trial without objection that he was president of such company when the contract was executed and that he executed the contract for the company, and the contract admitted in evidence, without objection, contains provisions for examination of the plant by the school board after the time when said trustee should have qualified as a member thereof, it will be deemed on appeal that the complaint was amended to show that said trustee was president of such company when the contract was executed. p. 23.

4. CONTRACTS.—*Public Contracts.—Officers Interested.—Validity.*—A contract executed in contravention of the provisions of §2423 Burns 1908, Acts 1905 p. 584, §517, is absolutely void. p. 26.

5. SCHOOLS AND SCHOOL DISTRICTS.—*Contract.—Officer Interested. —Becoming Interested Before Qualifying for Office.*—Where the president of a heating and plumbing company was elected a member of the board of trustees of a school corporation, and after his election, but before he qualified as trustee, a contract for installing a heating plant was entered into between said school corporation and the company of which said trustee was president by the provisions of which it was contemplated that a portion of the work might be performed after he should take possession of the office and it was provided that in such event an expert designated by the company was to act with the disinterested member of said board of trustees in determining whether said company had complied with all the stipulations of the contract, and the events contemplated thereafter occurred, said trustee had such an interest in the contract as §2423 Burns 1908, Acts 1905 p. 584, §517, was designed to prohibit, and the contract is void. p. 27.

6. CONTRACTS.—*Public Contracts.—Officer Interested.—Public Policy.*—In the absence of a statute forbidding an officer to be interested in a contract made by him for the public, his interest in such contract would render it void on the ground of public policy. p. 28.

7. CONTRACTS.—*Public Policy.—Validity.*—Contracts injurious to the public, or against the public good, or which have a tendency to injure the public, are against public policy and are void even though no injury result therefrom. p. 28.

8. EQUITY.—*Rules.*—An equitable right cannot be founded on a violation of law. p. 31.

9. MUNICIPAL CORPORATIONS.—*Illegal Contract.—Suit to Enjoin Payment.—Right of Taxpayer.*—Whether a taxpayer's taxes are large or small cannot affect his rights as a suitor in such capacity to enjoin the expenditure of the public money in pursuance to an illegal contract. p. 31.

10. CONTRACTS.—*Void Contracts.—Rights Acquired.*—No rights are acquired under a void contract. p. 31.

11. ACTION.—*Suit to Enjoin Expenditure of Public Funds.—Motive of Plaintiff.*—Where the plaintiff, as a taxpayer, has the right to invoke the equity powers of a court to enjoin the expenditure of public funds under the terms of a void contract, his right will not be forfeited because of his ill feeling towards one of the parties interested in the contract. p. 32.

From Spencer Circuit Court; *Elbert M. Swan,* Special Judge.

Suit by David A. Davison against Ernest E. Noble and

others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*John W. Brady, Lucius C. Embree, Morton C. Embree,* for appellants.

*Robinson & Stilwell, Thomas Duncan,* for appellee.

MORRIS, J.—Appellee filed his complaint in the Gibson Circuit Court on August 17, 1910, against appellants Noble, Yeager and Fisher, as trustees of the school city of Princeton, the school city of Princeton, and the Noble Plumbing and Heating Company, to enjoin them from performing a contract for the installation of a heating system in a public school building, on the ground that the contract was invalid.

The venue of the cause was changed to the Spencer Circuit Court. Demurrers were filed to the complaint, by each defendant, which the court overruled. There was a trial by the court, and judgment for plaintiff, enjoining defendants from further performing the stipulations of the contract. A motion by defendants for a new trial was overruled. The errors separately assigned by each defendant, and discussed here, are the overruling of defendants' several demurrers to the complaint, and their motions for a new trial.

The complaint alleges that plaintiff is a resident taxpayer of the city of Princeton; that defendants Noble, Yeager and Fisher constitute the school board of the city of Princeton; that in June, 1908, Yeager was elected a member thereof, for a three year term; that on June 6, 1910, Noble was elected a member thereof, for a three year term; that in July, 1910, Fisher was elected a member of the board to fill a vacancy caused by the death of one Reeves, and immediately qualified after his election; that Noble and Yeager each qualified as members of the board on August 1, 1908, and August 1, 1910, respectively.

The complaint further alleges that Noble is the president of defendant Noble Plumbing and Heating Company, which

is a corporation organized and doing business under the laws of Indiana, and engaged in the business of plumbing and installing heating plants; that defendant Ernest E. Noble owns a large number of shares of the capital stock of the corporation, and is interested in all contracts made by the company with other persons and corporations; that on June 25, 1910, the school board, by its then acting trustees, entered into a written contract with defendant Noble Plumbing and Heating Company, by the terms of which the company agreed to install a steam-heating plant in a public school building in the city of Princeton for the price of $2,675; that by the terms of the contract the plant was to be installed by September 1, 1910; that the provisions of the contract cannot be more fully set out in the complaint, because the contract is in the possession of defendants; that the company has commenced the work of installing the heating plant under the terms of the contract, and will complete the same and collect the price therefor from the school board, unless restrained by the court; that the contract is in violation of the statutes of Indiana, is contrary to public policy, and void; that the board of trustees is threatening to pay a portion of the contract price for work already done, and will do so unless restrained by the court; that plaintiff has no adequate remedy at law, and the payment of the contract price will irreparably damage plaintiff and all other citizens of Princeton.

Appellants contend that appellee, as a taxpayer of the city, has no standing in court as a plaintiff in an action of this kind; that such a suit will not lie at the instance of a single taxpayer, or of all the taxpayers of a city; that such right of action vests in the school corporation, and until it has refused a proper demand to perform its duties no right of action exists, and then, only in favor of the taxpayers of the corporation as a whole, in a suit by them all, or by one or more than one taxpayer representing them as a whole.

This position is untenable. It has been held repeatedly by this court that one or more than one resident taxpayer of a municipal corporation may sue to enjoin an illegal act, involving the expenditure of funds raised by taxation, even when it appears on the face of the complaint that plaintiff's interest does not differ in kind from that of the public in general, within the corporate limits. It was so decided in *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165. In that case the authorities on the proposition were collected and cited in such abundance that we do not deem it necessary to do more than call attention to those authorities.

A demand was not necessary as a condition precedent to plaintiff's right to bring the action. *Moore* v. *State, ex rel.* (1876), 55 Ind. 360; *Terrell* v. *Butterfield* (1883), 92 Ind. 1; *Agar* v. *State* (1911), 176 Ind. 234, 94 N. E. 819; *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643, 73 N. E. 625.

Counsel for appellant maintain that in any event the complaint is insufficient to repel a demurrer for want of facts, because it fails to allege that Ernest E. Noble was president of the plumbing company, or an officer or agent thereof, when the contract was executed on June 25, 1910.

It is not, in specific terms, alleged in the complaint that Noble was president of the company when the contract was executed, the allegation being that Noble "is the president," etc. The complaint was filed August 17, 1910.

Whether the question would be more appropriately presented by a motion to make the complaint more specific than by a demurrer for insufficient facts, or whether the complaint would fairly warrant the inference that Noble was president when the contract was executed, is not necessary to be determined, in view of the state of the record.

It was proved at the trial, without any objection by defendants, that Noble was the president of the corporation when the contract was executed, and, indeed, that he exe-

cuted the contract for the corporation. The contract itself, admitted in evidence without objection, shows provisions for the examination of the plant by the school board after the time when Noble should have qualified as a member thereof.

Section 700 Burns 1908, §658 R. S. 1881, provides that "no judgment shall be * * * reversed * * * by the Supreme Court, for any defect in form, variance, or imperfections contained in the record, pleadings, * * * or other proceedings therein, which by law might be amended by the court below, but such defects shall be deemed to be amended in the Supreme Court." We think this provision of our code is applicable here. The defect in failing to allege that Noble was president of the company at the time the contract was executed, as well as at the time of filing the complaint, is such that this court should deem the complaint amended in that particular. Browning v. Smith (1894), 139 Ind. 280, 37 N. E. 540; Evansville, etc., R. Co. v. Maddux (1893), 134 Ind. 571, 33 N. E. 345, 34 N. E. 511; Davis v. Doherty (1879), 69 Ind. 11; Bristol Hydraulic Co. v. Boyer (1879), 67 Ind. 236; Singer Mfg. Co. v. Doxey (1878), 65 Ind. 65; Carver v. Carver (1876), 53 Ind. 241; Krewson v. Cloud (1873), 45 Ind. 273; Hamilton v. Winterrowd (1873), 43 Ind. 393, Lowry v. Dutton (1867), 28 Ind. 473; Case v. Wandel (1861), 16 Ind. 459; Ebersole v. Redding (1864), 22 Ind. 232.

Appellants' counsel vigorously contend that the judgment is not supported by sufficient evidence, because it is shown thereby that the contract was executed before Noble qualified as a member of the school board, and, therefore, it was valid, in the absence of fraud. This contention requires a statement of the facts shown by the evidence, for the complaint is not drawn on the theory of fraud, but, that the contract was void, by statute, and, on grounds of public policy.

On June 6, 1910, Noble was elected, by the city council, a

member of the school board to succeed a member of the board whose term expired August 1, 1910, and he actually qualified August 4, 1910, and has since acted as a member of the board. On June 25, 1910, defendant plumbing company was a corporation, with a capital stock of $5,000, divided into shares of $50 each, all of which shares were owned by appellant Noble and his wife and son. Appellant Noble was the president and a director of the corporation, and drew a salary of $75 a month. His son was secretary and treasurer of the company. Mrs. Noble was a director, but held no other official position in the corporation. On June 25, nineteen days after Noble had been elected a school trustee, appellant plumbing company, by its president, signed a written proposal to put in the heating plant in controversy. This proposal, with some minor stipulations added by the school board, was accepted on the same day, in writing, by the board.

The contract provided for installing a heating plant in a school building, and that said work be completed on or before September 1, 1910, and be done in a thoroughly scientific manner. It contained the stipulation that should appellant Ernest E. Noble, "of the said Noble Plumbing & Heating Company qualify as school trustee for the school city of Princeton, before said heating and ventilating is installed and accepted, the said * * * company shall employ the services of a first-class heating engineer, said engineer to be approved by the other two members of the school board, to inspect and decide if said heating and ventilating plant has been installed and works according to the plans and specifications above referred to." The old radiators, then in the school building, were to be used for the work "and distributed and made up into proper sizes by the contractor."

It was also agreed that it would probably be necessary, during the first heating season, to "blow off" the boilers occasionally, under steam pressure, until all the grease and

sediment should have been removed from the old radiation pipe, and, in such event, the company bound itself to do the same, without extra cost; the company also bound itself to make, free of charge, all repairs made necessary during the first heating season on account of original defects in materials or workmanship.

It was finally provided in the contract that all materials should be of the best, and the apparatus thorough and complete, and anything necessary thereto, not mentioned in the specifications, to be furnished by the contractor regardless of the omission. The contract price was $2,675, sixty per cent. of which was to be due when all the materials were on the premises, and the boiler set up and tested, the balance within thirty days after all work was completed and accepted.

On August 8, 1910, all the materials were on the premises, and the boiler set up, and on that day the plumbing company presented its bill for $1,605. Mr. Yeager, school trustee, and subcontractor Prox, who put in the boiler for the plant, examined the work for the school board, and thereupon the bill was allowed and paid. At the time of filing the complaint on August 17, at least eighty per cent. of the work had been completed. The work had been commenced some time before Noble qualified as trustee, and the plaintiff knew the work was in progress. He did not know when he filed suit that any payment had been made on the contract. Plaintiff was mayor of Princeton, and had opposed the election of Fisher, as trustee, when he was elected, because he was secretary and treasurer of the water-works company, which had a contract with the city. After Fisher's election, plaintiff consulted lawyers with reference to bringing proceedings to have both Noble and Fisher removed from the school board.

Appellee claims the contract is void, because it violates §2423 Burns 1908, Acts 1905 p. 584, §517, and also on 4. grounds of public policy. The above section reads as follows: "Any * * * school trustee of any

town or city　*　*　*　who shall, during the time he may occupy such office,　*　*　*　be interested, directly or indirectly, in any contract for the construction of any *　*　*　work of any kind, erected or built for the use of *　*　*　any　*　*　*　city in the state,　*　*　*　shall be fined not less than three hundred dollars nor more than five thousand dollars, and be imprisoned in the state prison not less than two years,'' etc.

It has been held repeatedly that a contract executed in contravention of the provisions of this statute is absolutely void. *Wingate* v. *Harrison School Tp.* (1877), 59 Ind. 520; *Case* v. *Johnson* (1883), 91 Ind. 477; *Benton* v. *Hamilton* (1887), 110 Ind. 294, 11 N. E. 238; *Cheney* v. *Unroe* (1906), 166 Ind. 550, 77 N. E. 1041, 117 Am. St. 391.

Does this contract come within the inhibition of the statute? It was executed before Noble qualified as trustee, but, when executed, Noble's title to the office was perfect, though the time when his right of possession thereof should accrue had not yet arrived. When that time arrived, his right to the possession of the office could not be questioned. §6477 Burns 1908, Acts 1905 p. 437.

By the express provisions of the contract, it was contemplated that at least a portion of the stipulations thereof might be performed while Noble should be in possession of the office. In such event, provision is made for the contractor to employ at its expense, an expert, designated by it, and approved by the two other members of the board, to act with the disinterested members, in determining whether the contractor had complied with all the stipulations of the contract. The events, contemplated by the contract, occurred. Noble did qualify and enter into possession of the office. What effect Noble's resignation of his title to the office, or his failure or refusal to qualify, before the company commenced the work, might have had on the validity of the contract, is a question not presented by the record, and therefore will not be considered. He did qualify, as

contemplated by the contract, and he was interested therein when this suit was filed, just as the contract contemplated he might be interested, and this interest was such as the statute above quoted was designed to prohibit. The fact that the contractor agreed to furnish, at its expense, an expert, approved by the majority of the board, to discharge the duties of the disqualified member in reference to this contract, cannot possibly aid appellant plumbing company in its contention. The school board had no right to delegate the performance of such duties, even temporarily, to a contractor's employe, whether such duties were to be performed gratuitously or otherwise.

Even in the absence of the statute, the contract would, as appellee maintains, be void, because contrary to public policy. Counsel for appellants say in their brief: "Public policy is a juridical *ignis fatuus* upon which a judicial decision is sometimes sought to be founded when no support can be found for it in the law, and it is resorted to frequently when the purpose is to take from one of the parties to the controversy that which is his by vested right, sometimes by constitutional guarantee. * * * It was an unhappy day for the law when the term was invented and given meaning as having the force of law."

We cannot concur in any such suggestion. One has heedlessly considered the decisions of this court, who would at this day assert such doctrine. This court has ever steadfastly adhered to the rule which invalidates all agreements injurious to the public, against the public good or which have a tendency to injure the public. Contracts belonging to this class are held void, even though no injury results. The test of the validity of such agreements is the tendency to public injury, regardless of the actual intent of the parties, and regardless of actual results.

Integrity in the discharge of official duty is zealously guarded by the law. It lends no aid to that which tends to corrupt or contaminate official action, whether such action

be judicial, legislative or administrative. 9 Cyc. 485. And the tendency of contracts between municipal corporations and officers thereof, for municipal improvements or supplies, is to mislead the judgments of the officers of the municipality, if not to sully their purity.

In *Cheney* v. *Unroe, supra,* this court quoted with approval the following from 1 Dillon, Mun. Corp. (4th ed.) §444: "It is a well-established and salutary doctrine, that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based on principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well regulated system of jurisprudence prevails."

In *Waymire* v. *Powell* (1886), 105 Ind. 328, 4 N. E. 900, this court, in holding void a contract between a board of county commissioners and one of its members, said: "The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this, it accomplishes by holding all such employments, whether made directly or indirectly, utterly void."

In *City of Fort Wayne* v. *Rosenthal* (1881), 75 Ind. 156, 39 Am. Rep. 127, it was held that the employment by a board of health, of one of its members to vaccinate pupils in a public school, was void. The court said: "As agent he cannot contract with himself personally. He cannot buy what he is employed to sell. If employed to procure a service to be done, he cannot hire himself to do it. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case which comes within its reason."

In *Wingate* v. *Harrison School Tp., supra,* it was held that

a contract by a school trustee for the improvement of school property, by the terms of which he was to share in the profits of the contract, was void as against public policy.

In *Case* v. *Johnson, supra,* it was held that a contract between a board of town trustees and one of its members, for a street improvement, was void, both by statute and because it was against public policy.

Among the very numerous cases where this court has declared contracts void on grounds of public policy are the following: *Maguire* v. *Smock* (1873), 42 Ind. I, 13 Am. Rep. 353, holding illegal a contract with a property owner to pay his street improvement assessments for his signature to a petition for the improvement; *Board, etc.,* v. *Mullikin* (1844), 7 Blackf. 301, holding void a promissory note, executed to a board of commissioners, for the benefit of the county treasury, in consideration of the appointment, by the commissioners, of a certain person as collector of county revenue; *Ellis* v. *State* (1852), 4 Ind. 1, holding that the state printer could not sell nor assign his office; *Elkhart County Lodge* v. *Crary* (1884), 98 Ind. 238, 49 Am. Rep. 746, holding void a contract for services in securing the selection of a certain place for locating a government building; *State, ex rel.,* v. *Windle* (1901), 156 Ind. 648, 59 N. E. 276, holding invalid an agreement by which a county treasurer was to be allowed interest on money furnished by him for the payment of county obligations.

We see no reason for relaxing the rule adhered to so strictly by the courts of this State. In fact, not only in Indiana, but elsewhere, generally, the principle is applied by the courts in a large and constantly increasing number of cases. 9 Cyc. 482. As was said in *State, ex rel.,* v. *Windle, supra;* "The protection of the public interests requires that no exception to this rule shall be allowed, nor any evasions tolerated."

It is maintained by counsel for appellant that one seeking equity must do equity; that the school city holds the bene-

fit of the labor and materials furnished by the plumbing company, and it would be inequitable to adjudge an avoidance of the contract without restoring to the plumbing company the reasonable value of all work done and materials furnished.

In answer to this contention, it is sufficient to say that an equitable right cannot be founded on a violation of law. *Waymire* v. *Powell, supra.* Equity follows the law, and assists no one in obtaining or holding the fruits of an illegal agreement, but, on the contrary, leaves such person where it finds him. *Pittsburgh, etc., R. Co.* v. *Town of Crothersville* (1902), 159 Ind. 330, 64 N. E. 914; 16 Cyc. 145. This contract reveals a palpable attempt to evade the law. "He that hath committed iniquity shall not have equity." Fetter, Equity 37-40.

It is further contended, on behalf of appellants, that where the threatened injury to the complainant is small, and the granting of an injunction will work great hardship to the defendants, relief should be denied.

Appellee brought the suit as a taxpayer. Whether his taxes be large or small cannot in any manner affect his rights as a suitor in such capacity. *Chippewa Bridge Co.* v. *City of Durand* (1904), 122 Wis. 85, 99 N. W. 603, 106 Am. St. 931. There can be no balancing of equities in matters arising out of contracts prohibited by law or contrary to public policy. *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. 302.

It is also insisted by appellant's counsel that the plumbing company acquired rights under the contract which vested on the execution thereof, and these rights cannot be taken away because of the provisions of article 1, §10, of the Constitution of the United States, and §1 of the 14th amendment thereto, and of article 1, §21, of

Noble v. Davison—177 Ind. 19.

the Constitution of Indiana. Inasmuch as the contract was void, no rights thereunder were acquired by the company.

Appellants further contend that it is fairly shown by the evidence that the real purpose of the complainant was to force the resignation of Noble as trustee, by subjecting the plumbing company, in which he was interested, to expensive litigation; that when such ulterior purpose is shown, the relief prayed for should be denied, even if the contract is void.

We do not believe the evidence warrants the inference of the facts stated, but if it did, we do not think that the suggested conclusion of law would follow. If plaintiff, as a taxpayer, had the right to invoke the equity powers of a court to enjoin the expenditure of public money under the terms of a contract, void under the statute, and because against public policy, this right would not be forfeited because of his illwill towards one of the parties interested in the contract. The promotion of good-will among men is to be commended, but not to the extent of licensing the infraction of our laws. *Chippewa Bridge Co.* v. *City of Durand, supra.*

Many other questions are raised in this appeal, but they all rest on the assumption that the contract was valid when made, and, in view of the conclusion reached, it is not necessary to consider them. There is no error in the record. Judgment affirmed.

NOTE.—Reported in 96 N. E. 325. See, also, under (1) 28 Cyc. 1737; 22 Cyc. 897; 2 Am. St. 92; (2) 28 Cyc. 1745; (3) 3 Cyc. 292, 293; (4) 9 Cyc. 475; (5) 35 Cyc. 954; (6) ; 9 Cyc. 473; Ann. Cas. 1912 D. 659; (7) 9 Cyc. 481; (8) 16 Cyc. 145, 146; (9) 28 Cyc. 1736; (10) 9 Cyc. 546; (11) 28 Cyc. 1737; 36 L. R. A. (N. S.) 1.