LENNOX AND MATTHEWS AND ASSOCIATES, INC.
*v.* ROZZELLE

[No. 28,991. Filed November 19, 1952.]

*Carl E. Stilwell* and *Robert L. Life,* both of Indianapolis, for appellant.

*Yockey & Yockey,* of Indianapolis, for appellee.

DRAPER, J.—The appellee brought this action against the appellant to recover for services rendered, which services consisted of the making and furnishing of certain daily reports to the appellant.

The second paragraph of complaint, upon which the judgment appealed from was rendered, pleads an implied promise to pay the reasonable value of the services rendered. The first of the two questions raised challenges the sufficiency of the evidence to sustain the decision.

The appellant was employed by the State of Indiana as the architect and engineer in charge of the construction of the State Board of Health building, in the city of Indianapolis. The appellee was employed by the State as clerk of the works, on the same building. His duty as clerk of the works, as disclosed by the record, was to keep a record and check of all the contractors who brought materials onto the property for the State, and to check the progress of the work. The evidence does not disclose the identity of the contractor or contractors. There is no evidence that either party to this record had any direct or indirect interest in the project, or in the contract for the con-

struction thereof, except as above mentioned. Nor does it appear from the record before us, by which we are bound, that the performance of these services by the appellee for the appellant was or could be in any way inconsistent with the duty of either of them to the State, or that it did have or could have any tendency to be injurious to the public good. Compare *Cheney* v. *Unroe* (1906), 166 Ind. 550, 77 N. E. 1041.

Before the appellee was employed as clerk of the works, he talked with Mr. Matthews, a member of appellant's firm, and one of those in charge of the actual work, concerning the making of these reports. He did this at the direction of the then Director of Procurement and Supply for the State of Indiana. His services had to be approved by the architects, and the director requested that he talk to Mr. Matthews and Mr. Lennox and make the necessary arrangements.

In these conversations with appellant the matter of these reports was discussed. It is undenied that 679 of these reports were thereafter made by the appellee and accepted by the appellant over a period of 22 months, and that they were of the reasonable value of five dollars each.

The appellee's version of the conversations between him and the appellant could leave no doubt in the mind of any reasonable man that the services were requested by the appellant and that they were not to be gratuitously rendered, but on the contrary the appellant expected to pay for them and the appellee expected to be paid. Under such circumstances the law will imply a promise to pay the reasonable value thereof. *The Louisville, New Albany and Chicago Railway Co.* v. *Hubbard* (1888), 116 Ind. 193, 18 N. E. 611.

The fact that the appellee made no demand for payment until after the reports had been furnished is a circumstance to be considered in determining whether the services were intended to be gratuitous even though they were requested by the person sued. See *Western Oil Refining Co.* v. *Underwood* (1925), 83 Ind. App. 488, 149 N. E. 85. But it is not necessarily decisive. The question is, after all, one to be resolved by the trial court from all the evidence adduced on the subject.

An architect who was called by the appellant was asked whether it was proper procedure for the clerk of the works to furnish a report of the daily progress of construction to the architects employed to supervise the work. The court sustained an objection to the question in that form but indicated the witness would be permitted to answer if he were asked what the duties of a clerk of the works were. The appellant thereupon offered to prove that the witness would testify, if permitted, that it is proper procedure for a clerk of the works to furnish a written report of the daily progress of construction to the architect in charge.

Error or not, we are unable to see how the refusal of the offered proof could have harmed the appellant, since it went no further than to establish the fact that the appellee had not acted improperly in furnishing the reports to appellant. It is elementary that error, unaccompanied by prejudice, is not ground for reversal.

Judgment affirmed.

JASPER, C. J., dissents.

## DISSENTING OPINION

JASPER, C. J.—I dissent to the transfer of this cause of action to this court.

Appellee, as an agent of the State of Indiana, was employed to represent the state as Clerk of the Works for the construction of the State Board of Health Building.

Appellee, being employed by the State of Indiana, then agreed to submit daily reports to appellant, who was the architect and engineer in charge of construction. Six hundred and seventy-nine reports were submitted to appellant. Appellee contended that he was entitled to be paid by the architect for the reports submitted.

The Appellate Court found that the employment by the architect and engineer was against public policy. This court has held that an agent cannot serve two masters whose business transactions may be antagonistic. *Cheney* v. *Unroe* (1906), 166 Ind. 550, 77 N. E. 1041; *Noble* v. *Davison* (1912), 177 Ind. 19, 96 N. E. 325. It is unquestioned that a Clerk of the Works is a direct representative of the State of Indiana acting through the Director of the Division of Public Works and Supply. It is his duty to see that the plans and specifications are carried out to the letter, to check the material, and to see that no materials are substituted. He is required to check and certify the correctness of all invoices submitted by the architect. He can stop construction if the plans and specifications are not being carried out.

There can be no question but what his interests are adverse and antagonistic to that of the architect. Any agreement to be paid by the architect would cause the appellee to be serving two masters. As was said in

*Noble* v. *Davison, supra* (pp. 28, 29 of 177 Ind., pp. 329, 330 of 96 N. E.) :

"The test of the validity of such agreements is the tendency to public injury, regardless of the actual intent of the parties, and regardless of actual results. . . .

"In *Cheney* v. *Unroe, supra,* this court quoted with approval the following from 1 Dillon, Mun. Corp. (4th ed.) §444: 'It is a well-established and salutary doctrine, that he who is intrusted with the business of others cannot be allowed to make such business an object of pecuniary profit to himself. This rule does not depend on reasoning technical in its character, and is not local in its application. It is based on principles of reason, of morality, and of public policy. It has its foundation in the very constitution of our nature, for it has authoritatively been declared that a man cannot serve two masters, and is recognized and enforced wherever a well regulated system of jurisprudence prevails.'

"In *Waymire* v *Powell* (1886), 105 Ind. 328, 4 N. E. 900, this court, in holding void a contract between a board of county commissioners and one of its members, said: 'The law will not permit public servants to place themselves in a situation where they may be tempted to do wrong, and this it accomplishes by holding all such employments, whether made directly or indirectly, utterly void.' "

In *Cheney* v. *Unroe, supra* (pp. 552, 553 of 166 Ind., pp. 1042, 1043 of 77 N. E.), this court said:

"There is a class of contracts, entered into by officers and agents of the public, which naturally intends to induce the officer, or agent, to become remiss in his duty to the public, that the courts unhesitatingly pronounces as illegal and void as being contrary to public policy.

"As indicating the State's disapproval of kindred contracts, the legislature has provided as follows: 'Any . . . county commissioner, . . . or their appointees or agents, . . . who shall, during the time he may occupy such office . . . be interested, directly

or indirectly, in any contract for the construction of . . . work of any kind erected or built for the use of the . . . township, . . . shall be fined . . . and imprisoned in the state prison,' etc. §2136 Burns' 1901, §2049 R. S. 1881. All contracts entered into in contravention of the statute are utterly void. *Wingate* v. *Harrison School Tp.* (1877), 59 Ind. 520; *Case* v. *Johnson* (1883), 91 Ind. 477; *Benton* v. *Hamilton* (1887), 110 Ind. 294.

"It remains to be seen whether the contract sued on falls within the general class referred to above. . . . The principle is stated in 1 Clark & Skyles, Agency, §39 (e), as follows: 'Any contract of agency by a public officer by which he binds himself to violate his duty to the public, or which places him in a position which is inconsistent with his duty to the public and has a tendency to induce him to violate such duty, is clearly illegal and void.' Greenhood, Public Policy, p. 337, states the doctrine thus: 'Any contract by one acting in a public capacity, which restricts the free exercise of a discretion vested in him for the public good, is void.' See, also, page 337 quoted approvingly in *Brown* v. *First Nat. Bank* (1894), 137 Ind. 655, 667, 24 L. R. A. 206."

Under the facts of this case, I feel that this court should have denied the petition to transfer this cause, and that the implied promise to pay for the reasonable value of the services rendered by appellee is against public policy.

NOTE.—Reported in 108 N. E. 2d 621.