Edward H. SNYDER and Genola Snyder, Appellants,

v.

TELL CITY CLINIC and Robert A. Ward, Appellees.

No. 1–178A21.

Court of Appeals of Indiana, First District.

June 27, 1979.

Ronald Warrum, Bates, Warrum & Noffsinger, Evansville, for appellants.

Gary Becker, Zoercher, Becker & Huber, Tell City, for appellees.

LYBROOK, Judge.

Edward H. Snyder (Snyder) was injured in August, 1971, when a window glass fell on him, broke, and pieces of glass penetrated into his neck. Snyder went to Dr. Robert Ward (Ward), a physician at the Tell City Clinic (Clinic), for treatment of the injury. Ward cleaned and sutured Snyder's wounds, Snyder returning subsequently for the removal of his stitches. On October 16, 1973, Snyder returned to Ward suffering from low back pain, pain in the sciatic area (the hip), and pain in the left leg. As a result, Snyder was referred to a specialist by Ward, and Ward made an appointment with the specialist on behalf of Snyder. Snyder failed to keep this appointment, however, and instead consulted a chiropractor of his own choosing.

In March, 1974, Snyder again returned to the Tell City Clinic, suffering further degeneration in his condition, particularly in his left leg. Ward was not present and did not examine Snyder on this visit, but another Clinic doctor examined him and referred him to yet another specialist. Snyder kept this appointment, and the specialist found that a piece of glass had worked its way into Snyder's spinal canal causing his weakened, degenerative condition.

Snyder and his wife filed an action for medical malpractice against Ward and the Clinic on April 5, 1976. Thereafter, on April 27, 1976, the defendants, Ward and the Clinic, filed a motion to strike. A hearing was held on the motions on May 21, 1976, and the defendants' motion to dismiss and motion for more definite statement were denied, while the motion to strike was granted. The plaintiffs were granted the right to amend their complaint. The plaintiffs exercised this right and filed an amended complaint on May 27, 1976. Subsequent to this amended complaint, the plaintiffs sought a change of venue on June 21, 1976. The Dubois Circuit Court received the transcript and pleadings of the action from the Perry Circuit Court on July 8, 1976.

Thereafter, on September 7, 1976, the plaintiffs filed notice of application for default judgment and motion for default judgment, and a hearing on the motion was assigned for September 17, 1976. The defendants, on September 15, 1976, then filed answers to the plaintiffs' amended complaint, a motion for continuance of the hearing on the motion for default judgment, and a motion for enlargement of time up to and including September 17, 1976, in which to answer plaintiffs' amended complaint. The court granted defendants' motion for enlargement of time, and accepted both of the defendants' answers to plaintiffs' amended complaint. Both answers included statements that the statute of limitations for medical malpractice had run on the alleged acts of malpractice. Defendants then moved for a change of venue, and the cause was venued to Pike County on November 1, 1976.

On January 6, 1977, the defendants moved the Pike Circuit Court for summary judgment alleging that there was no issue as to any material fact. The motion was based on affidavits, depositions, and all previous pleadings, which included the claim that the statute of limitations had run on the cause of action. Based on the fact that the action was barred by the statute of limitations, the trial court granted the defendants' motion for summary judgment.

The plaintiffs filed their motion to correct errors on July 29, 1977, and it was overruled October 21, 1977. Plaintiffs then filed a timely praecipe and this appeal results.

In their motion to correct errors, the plaintiffs allege:

1. That the court erred in overruling plaintiffs' motion for default judgment.

2. That the court erred in overruling plaintiffs' motion for default judgment without a hearing.

3. That the court erred in permitting defendants to file their respective answers after plaintiffs' motion for default judgment had been filed and before any hearing on said motion.

4. That the court erred in failing to rule on plaintiffs' motion for default judgment.

5. That the court erred in failing to have a hearing on plaintiffs' motion for default judgment.

6. That the court erred in sustaining defendants' motions for summary judgment.

7. That the court erred in sustaining defendants' motions for summary judgment without designating the issues or claims upon which it found no genuine issue as to any material facts.

8. That the court erred in sustaining defendants' motions for summary judgment without issuing findings of fact and conclusions of law.

All of the plaintiffs' allegations stem from three key issues:

(1) Did the trial court commit reversible error by overruling plaintiffs' motion for default judgment?

(2) Did the trial court commit reversible error by allowing the defendants-appellees to answer the plaintiffs-appellants' amended complaint after the procedural time limit for such answer had elapsed?

(3) Did the trial court commit reversible error by granting defendants' motion for summary judgment?

In deciding these key issues, all of the errors alleged by the appellants will be properly considered.

■ The appellants allege that the trial court should not have overruled their motion for default judgment because the appellees were some 135 days late in answering appellants' amended complaint. Ind. Rules of Procedure, Trial Rule 55 states in relevant part:

"(A) Entry. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise comply with these rules and that fact is made to appear by affidavit or otherwise, the party may be defaulted.

(B) Default judgment. In all cases the party entitled to a judgment by default shall apply to the court therefor . . . If the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application."

Based on this rule, and the relevant portion of Ind. Rules of Procedure, Trial Rule 15(A),[1] appellants argue that appellees' delinquent answers to their amended complaint should not have been allowed by the trial court because they were filed after the appellants' motion for default judgment. Although it is now the law that the three day notice requirement of an application for judgment by default is not to provide a delinquent party further time in which to plead and thereby entirely avoid the question of default, *Clark County State Bank v. Bennett,* (1975) Ind.App., 336 N.E.2d 663,[2] the trial court does have discretion in allowing any such pleading and should balance, in considering such a pleading:

"[O]n the one hand the policies of speedy determination of actions and avoidance of delay, and on the other

---

1. "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within twenty [20] days after service of the amended plead-

ing, whichever period may be the longer, unless the court otherwise orders."

2. Overruling *Hiatt v. Yergin,* (1972) 152 Ind. App. 497, 284 N.E.2d 834.

[hand], the policy favoring resolution of causes on their merits." *Clark County State Bank, supra,* at 667.

■ T.R. 6, provides the court with discretion to permit enlargements of time for pleadings and case law reiterates this discretionary standard. *Clark County State Bank, supra; Green v. Karol,* (1976) Ind. App., 344 N.E.2d 106. Only an abuse of such discretion would allow this court to overturn the decision in appellees' favor in the trial court, and the standard that "a default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party." *Green, supra,* at 111, must be considered.

■ In the case at bar, plaintiffs' prayers for relief were in substantial amounts, there were motions from both parties before the court, and discovery was occurring during the period of defendants' inaction on plaintiffs' amended complaint. Therefore, the trial court acted well within its discretionary standard in allowing defendants' answer to plaintiffs' amended complaint and in denying the plaintiffs' motion for default judgment.

As stated in *Green, supra,* at 110:

"[T]here is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations."

■ The appellants continue in their allegations to say that the trial court erred in denying their motion for default judgment because the court failed to have a hearing on the plaintiffs' motion within the three day limit imposed in T.R. 55(B), and failed to actually rule on the motion. However, a close reading of T.R. 55(B) and case law interpreting the rule strongly indicates that a hearing on the motion for default judgment is for the benefit of the non-moving party and for the trial court's information in acting on the motion. That a technical default occurred is not the question; the question is whether or not there were circumstances sufficient to mitigate the de-

fendants' laxity in answering the plaintiffs' amended complaint, thus allowing the trial court to accept the defendants' answers to it. The law in this area was well stated in *Clark County State Bank, supra,* at 667, when this court said:

"Our interpretation of the purpose of the three day notice requirement is to provide the defaulting party with the opportunity to appear and demonstrate to the court reasons why its discretion should be exercised in favor of proceeding to trial on the merits."

■ In the case at bar, the court found that the circumstances warranted the acceptance of the defendants' answer to plaintiffs' amended complaint, thus negating any need for a hearing for the benefit of this court or for the defendants, and also negating any need to actually rule on the motion. Furthermore, Indiana case law shows an absolute need for the hearing only if the default motion is granted by the court, thus preserving for the defaulted party the right to demonstrate mitigating reasons for noncompliance with T.R. 15. Nowhere has this court found a requirement for a mandatory hearing pursuant to T.R. 55(B) if the motion for default is not granted. In essence, the trial court's decision to accept defendants' late answers was a ruling on the plaintiffs' motion for default judgment, and even if we assumed that the court erred in not specifically ruling on the motion, such error was not prejudicial to the plaintiffs. It is elementary that error, unaccompanied by prejudice, is not ground for reversal. *Lennox and Matthews & Associates, Inc. v. Rozzelle,* (1952) 231 Ind. 343, 108 N.E.2d 621.

Finally, the appellants urge that the trial court erred in granting the appellees' motions for summary judgment and that error was committed when the court failed to issue findings of fact and conclusions of law upon which the summary judgment was based.

■ In seeking summary judgment, both defendants alleged that there was no issue as to any material fact, that the motion was based upon affidavits introduced

with the motion for summary judgment and upon pleadings previously filed in the case, and that they were entitled to judgment as a matter of law. Thus, incorporated into the defendants' motion for summary judgment, as stated in their answer to the plaintiffs' amended complaint, was the defense that the statute of limitations for medical malpractice actions had run on the cause and the action was, therefore, barred.

Ind.Code 34–4–19–1 provides:

"No action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hospitals, sanitariums, or others, unless said action is filed within two [2] years from the date of the act, omission or neglect complained of."

In this case, Ward saw and treated Snyder in August, 1971, and last saw him in relation to the injury in question in October, 1973; plaintiffs' complaint was filed April 5, 1976, some two and one-half years after the last injury-related examination. Therefore, summary judgment must be granted to the appellees unless, as the appellants contend, Ward was guilty of concealment or fraud on the appellants. Such activity would serve to toll the statute of limitations. *Guy v. Schuldt,* (1956) 236 Ind. 101, 138 N.E.2d 891. However, fraud and concealment must be specifically pleaded, but the appellants never alleged such in any of their pleadings. As stated in *Guy, supra,* at 893:

"Where there are exceptions to the statute of limitations, the fact that the complaint does not show affirmatively that the action is within such exceptions does not make the complaint fatally defective, and, therefore, subject to a demurrer under such statute. If the statute of limitations is pleaded in an answer the plaintiff may then by reply set up the exception."

In the case at bar, the appellants did not set up any exceptions in their original complaint, in their amended complaint, or in any response to appellees' answers and alleged defenses.

Even if the appellants had properly pleaded their exceptions, their efforts would have proven fruitless. First of all, the record does not show that Ward attempted to conceal anything from the appellants. In fact, when Ward realized that Snyder's medical problem was continuing, he arranged an appointment for Snyder to see an orthopedic specialist. Snyder did not keep this appointment, however, but chose to see a chiropractor without consulting Ward.

The malpractice statute of limitations, Ind.Code 34–4–19–1, does not deprive a patient of a malpractice remedy if he did not and could not have known of his claim within two years of the initial act, omission, or neglect. *Toth v. Lenk,* (1975) 164 Ind.App. 618, 330 N.E.2d 336. However:

"[W]here the patient learns of the malpractice or learns information which would lead to discovery of the malpractice if the patient exercised diligence to discover, the statute will commence to run." *Toth, supra,* at 340.

This plaintiff did not exercise diligence, as he did not follow the express medical opinion of his doctor, the appellee herein. Doctrines such as fraud, constructive fraud, concealment, and equitable estoppel:

"[P]rovide protection to the patient who has been necessarily unaware of the wrong that has been done, and that accordingly, reasonable opportunity to bring suit is afforded by the statute under these rationales without making it necessary to construe the statutory language as necessarily implying a qualification for the ability to discover in the exercise of reasonable care." *Toth, supra,* at 340.

This case is much like *Toth.* In the *Toth* case, Toth was treated by a doctor for seven months, yet he continued to have difficulties with his medical problem. He sought additional medical opinion, and saw another doctor several times relating to his problem.

Some 36 months later, Toth returned to his original doctor for an unrelated examination, and subsequently went to yet another doctor concerning his chronic injury. Finally, from this final doctor, Toth discovered the original malpractice and filed his complaint, some four years after the alleged malpractice. The trial court granted summary judgment stating that where a patient continues to have pain and suffering for a reasonable period of time after leaving the care of a physician, he is on notice to seek the advice of other physicians. The court held that after the patient ceased to be treated by the doctor, and the patient was well aware of the continuing nature of his problem, then the statute began to run.

The facts in the case at bar, if anything, are even more supportive of the summary judgment. Snyder went to Ward for medical attention. Realizing Snyder's continuing injury, Ward referred him to a specialist. Snyder did not keep his appointment. Snyder not only failed to exercise due diligence in not keeping the appointment, but he specifically refused to follow Ward's medical advice. Therefore, the statute of limitations began to run in October, 1973, when plaintiff had continuing medical problems and failed to take that course recommended by his physician. The filing of plaintiffs' complaint in April, 1976, goes well beyond the two year statute of limitations, and, no exceptions being available to the plaintiffs, allows the affirmance of the trial court's decision in favor of Ward and the Clinic.

Finally, the appellants' allegation that the trial court erred in granting summary judgment because it did not issue findings of fact and conclusions of law is absolutely without merit. In issuing summary judgment, the trial court explicitly set out findings of fact and its conclusions based on those findings.

Affirmed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.