STATE of Indiana, through Its HIGH-
WAY DEPARTMENT, Appellant
(Defendant Below),

v.

Ronald E. SNYDER and Betty M. Snyder
in their capacity as Co–Guardians of
Dan E. Snyder, an Adult Incompetent,
Appellees (Plaintiffs Below),

Toby L. Parker, (Defendant Below).

No. 91S02–9206–CV–522.

Supreme Court of Indiana.

June 30, 1992.

Linley E. Pearson, Atty. Gen., Stephen C. McNutt, Deputy Atty. Gen., Indianapolis, for appellant.

Brent E. Clary, Roger Wm. Bennett, Bennett Boehning Poynter & Clary, Lafayette, Roger Miller, Miller & Martin, Frankfort, for appellees.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

Ronald E. Snyder and Betty M. Snyder, in their capacity as Co–Guardians of Dan E. Snyder (Plaintiffs–Appellees below), seek transfer after the Court of Appeals reversed a judgment entered, following a jury trial, in their favor and against the State of Indiana (Defendant–Appellant below). *State v. Snyder* (1991), Ind.App., 570 N.E.2d 947. We grant transfer and address the following issues:

(1) Whether the State waived its objection to inconsistent verdicts;

(2) Whether the jury returned inconsistent verdicts;

(3) Whether the trial court erred in admitting certain photographs; and

(4) Whether the trial court properly assessed costs against the State.

### I. *Facts*

While hitchhiking on November 9, 1985, Dan Snyder ("Snyder") accepted a ride from Toby Parker and Jeff Price. An accident occurred when the automobile, driven by Parker, was forced off the road by an approaching car that appeared to be on Parker's side of the road. Once off the roadway, the difference in the height of the road and the shoulder (the "lip") prevented Parker from returning the automobile to

the roadway. Parker's vehicle ultimately struck a utility pole. Snyder suffered brain injuries and has since been made the ward of his parents. Price was killed. Snyder brought suit against Parker alleging willful and wanton conduct in the operation of the automobile and against the State for negligent construction and maintenance of the lip. Both Snyder and Parker had consumed alcohol before the accident, and there was evidence at trial to support the conclusion that Snyder was aware of Parker's condition.

Snyder's action against Parker was tried pursuant to the Comparative Fault Act, *Ind. Code* § 34-4-33-1 *et seq.* In that action, the jury found in favor of Parker and against Snyder, and returned a verdict form indicating that Snyder was more than fifty per cent at fault. As to the State, the jury returned a verdict in favor of Snyder and against the State, and awarded damages in the amount of $1,000,000. On the State's motion, this amount was reduced to $300,000 in accordance with *Ind. Code* § 34-4-16.5-4. Judgment was entered on these verdicts, and the State appealed.

On appeal, the State claimed the verdicts were inconsistent because the jury found Snyder more than fifty per cent at fault in his action against Price but did not find Snyder contributorily negligent in his action against the State. No one appealed from the judgment entered in Snyder's action against Parker. The Court of Appeals agreed that the verdicts were inconsistent and ordered a new trial on both of Snyder's claims, the one against the State and the one against Parker. For the reasons outlined below, we grant transfer and reinstate the trial court's judgment.

## II. *Waiver*

■ Snyder argues that the State has waived any argument that the verdicts are inconsistent because the State failed to make a timely objection. Contrary to the assertions in Snyder's petition, however, the record discloses that the State did object to the court's verdict forms before they were submitted to the jury, in part on the grounds that the forms might lead to an inconsistent verdict.[1] The trial court overruled this objection, rejected the proposed verdict forms submitted by the State, and tendered its own forms to the jury. The State made no objection to the verdicts returned by the jury before its members were excused.

Snyder asserts that it was incumbent upon the State to object to the form of the verdicts immediately after they were returned so that the trial court could instruct the jury to resume deliberations, thus enabling a proper verdict to be reached without the burden and expense of a new trial. Although we agree that the State might have objected to the verdicts at the time they were returned, the failure of the State to do so does not constitute a waiver of its right to have this issue decided on appeal.

The cases cited by Snyder in support of the waiver theory are distinguishable from the facts here. *DDR Computer Serv. Bureau, Inc. v. Davis* (1980), Ind.App., 411 N.E.2d 722, and *Nicholson's Mobile Home Sales, Inc. v. Schramm* (1975), 164 Ind. App. 598, 330 N.E.2d 785, and *Wolff v. Slusher* (1974), 161 Ind.App. 182, 314 N.E.2d 758, involved situations where the complaining party made no objection at any time to the verdict forms. By comparison, here, the State objected to the jury forms before they were submitted to the jury on the grounds that it provided the possibility for inconsistent verdicts, and submitted its own proposed forms.

Under these circumstances, this issue of inconsistent verdicts was not waived and we will address the merits.

## III. *Inconsistent Verdicts*

■ The State argues that the verdicts were inconsistent because, under common

---

1. The jury was given three possible verdict forms concerning Snyder's claim against Parker. Part I was to be completed if the jury found in favor of Parker and against Snyder. Part II was to be completed if the jury found that Parker and Snyder were both at fault, but that Snyder's fault was greater than fifty percent of the total fault involved in the incident. Part III was to be completed if the jury found that Parker and Snyder were both at fault, but Snyder's fault was less than fifty percent. None of these forms referred to any fault of the State; the jury was asked to compare only the fault of Snyder and Parker.

law concepts of contributory negligence, the jury's finding Snyder at fault with respect to his claim against Parker would automatically preclude a recovery against the State. The Court of Appeals agreed. 570 N.E.2d at 949. The State insists that the language on the verdict forms used here must be considered and is controlling. In essence, the State invites us to treat the verdict form returned in Snyder's claim against Parker as a special verdict or interrogatory to be compared to the general verdict returned by the jury in Snyder's claim against the State. We decline this invitation.

Special verdicts and interrogatories were eliminated by Indiana Trial Rule 49. Thus, the verdict in Snyder's claim against Parker cannot be considered by us as a special verdict or interrogatory. We acknowledge that the statutory scheme of the Comparative Fault Act requires that several verdict forms be given to the jury. We view this as an attempt by the legislature to prescribe a procedure by which the jury might be guided through the process of determining fault and assessing damages, and we do not intend to discourage the use of these forms in assisting the jury to properly determine fault and award damages in controversies tried under the Comparative Fault Act. However, we will not consider such verdict forms to be special verdicts or interrogatories. We hold that such forms as are prescribed by the Act will be treated as general verdicts and may not be used to impeach the general verdict returned here in favor of Snyder and against the State.

Snyder's claim against Parker was governed by the Comparative Fault Act, and Snyder's claim against the State was governed by principles of common law negligence. Because the legal theories under which the two claims were prosecuted are not consistent, we will not reverse the judgments entered pursuant to these legal theories merely because such verdicts may appear to be inconsistent. This case illustrates the difficulty encountered when claims premised on the Comparative Fault Act principles are prosecuted in the same actions as claims against entities exempted from the Comparative Fault Act. The

Comparative Fault Act provides for defenses which do not necessarily duplicate those allowed in traditional common law negligence actions. This is apparent in the context of the defense of incurred risk. At common law, a plaintiff who incurred the risk was barred from *any* recovery because, having deliberately engaged in a course of conduct with knowledge and appreciation of the specific risks involved, he accepted the entire risk of injury without regard to whether he exercised due care in deciding to encounter the risk. *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 408–410, 379 N.E.2d 1004, 1008. Thus, even if the defendant had breached the duty of exercising reasonable care toward the plaintiff, the plaintiff was aware of the risk of such a breach and voluntarily chose to encounter it. No recovery was allowed in such instances.

Under the Comparative Fault Act, however, plaintiff's incurred risk is considered as "fault" and is to be compared to other fault contributing to the accident. Thus, although at common law a plaintiff would have incurred the risk of the entire accident, under the Comparative Fault Act, the plaintiff has no longer incurred the entire risk but, theoretically, only a portion of it. Accordingly, comparing incurred risk under the Act with incurred risk at common law is a comparison of two distinct legal theories.

■ By exempting the State from the Comparative Fault Act, the legislature has created separate rules to be applied in a single negligence action based upon the legal status of the parties. This, in turn, has raised questions concerning how to keep jury confusion to a minimum and fairness to a maximum. *See e.g. Huffman v. Monroe County Comm. Sch. Corp.* (1992), Ind., 588 N.E.2d 1264, 1267, where we stated that "[t]o apply two separate rules based on the legal status of the parties would serve to add further confusion to the orderly administration of justice in cases where, as here, some parties are covered by the Comparative Fault Act and others are not. Although we cannot end all of the confusion created by this predicament in

one case, we refuse to add to it by imposing two conflicting rules of law...." *See also* Symposium on Indiana's Comparative Fault Act, 17 *Ind.L.Rev.* 687 (1984). Requiring that there be perfect symmetry among verdicts in such cases does nothing but add to this confusion because, as the discussion concerning incurred risk illustrates, the court would, in some instances, be attempting to reconcile inconsistencies which are not necessarily reconcilable. We will not require the impossible. In short, this Court will not review the consistency of verdicts rendered under the Comparative Fault Act and verdicts rendered under common law principles in cases such as this.

Parties who find themselves faced with prosecuting or defending mixed-theory cases such as this may file separate law suits or request separate trials. *See State v. Schuetter* (1987), Ind.App., 503 N.E.2d 418, 421. Obviously, in those situations, we would not require that the verdicts be consistent, and we will not require it here.

### IV. *Photographs*

■ On appeal, the State also contended the trial court erroneously admitted exhibits 17, 18, and 19 because Snyder failed to establish an adequate foundation for admission of the exhibits. We agree with the Court of Appeals that the trial court did not abuse its discretion in admitting the exhibits.

The exhibits were photographs taken 16 months after the accident showing the difference in height between the paved roadway and the shoulder area as well as the slope of the shoulder toward the grassy area abutting the roadway. When Snyder moved for admission of the photographs, the State objected that there was no foundation that the photographs accurately depicted the area as it existed on the date of the accident and, therefore, the probative value of the photographs was outweighed by the misleading and confusing effect the exhibits might have on the jury.

■ Admission of photographs into evidence is left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion. *Thornton v. Pender* (1978), 268 Ind.

540, 547, 377 N.E.2d 613, 618. Generally, as here, photographs introduced in conjunction with testimony, are admitted, not as direct evidence of the scene depicted, but to assist the jury in visualizing the testimony of a witness. *Stuckman v. Kosciusko Co. Bd. of Zoning Appeals* (1987), Ind., 506 N.E.2d 1079, 1082. The length of time between an accident and the date photographs are taken is not determinative of their admissibility. *Gill v. State* (1977), 267 Ind. 160, 166, 368 N.E.2d 1159, 1162. Discrepancies in objects shown in photographs between the date of the accident and the date the photographs were taken which are not materially misleading may be admitted. The testimony may serve to explain such discrepancies so that the jury is not misled. *Id.* In addition to considering the accuracy and usefulness of photographs, on appeal we may also consider evidence presented after the photographs are admitted. *Thornton*, 268 Ind. at 547, 377 N.E.2d at 619.

Snyder's witness testified that the photographs were a true and accurate representation of the roadway as it existed on the date the photographs were taken. The investigating officer on the scene the date of the accident testified that there was a lip on the edge of the roadway, but he did not measure its height. Snyder's expert, qualified in highway design, testified as to the height of the lip and the effect that the lip might have on a driver's ability to return to the paved portion of the roadway. Parker testified that the lip existed on the date of the accident and that he was unable to return his car to the roadway on account of the lip. Also admitted were photographs taken the date of the accident showing the same area, and showing a difference in height between the paved roadway and the shoulder. The State presented evidence about factors, such as weather and roadwork, which might have affected the height of the lip during the sixteen-month period from the date of the accident until the photographs in question were taken. The State claims that the probative value of the photographs was outweighed by the misleading and confusing effect the photographs had on the jury as to the height of

the lip and, as a result, admission of the photographs was unfairly prejudicial. We do not agree.

The photographs are relevant because they show the scene of the accident and illustrate the existence of the lip testified to by several witnesses. The jury had before it information as to how the height of the lip might have changed over time, and also had before it photographs taken the night of the accident showing the roadway lip. The jury could have compared photographs taken on the date of the accident with those taken later. We conclude that the State's objections go toward the weight to be assigned to the photographs but not to their admissibility. We do not perceive that the later photographs misled or confused the jury in any way. The jury had the opportunity to hear the witnesses' testimony bearing on the condition of the road and the opportunity to review both sets of photographs. Accordingly, we find that the trial court was within its discretion to admit the photographs.

### V. Costs

■ The trial court assessed court costs against the State as part of the judgment. The Court of Appeals correctly determined that absent specific statutory authority, the State is not liable for ordinary court costs. *State Bd. of Tax Comm'rs. v. Warner Press, Inc.* (1970), 254 Ind. 183, 258 N.E.2d 621; *State v. City of Terre Haute* (1968), 250 Ind. 613, 623, 238 N.E.2d 459, 465. Therefore, that portion of the trial court's judgment ordering the State to pay costs is reversed.

### VI. Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse that part of the trial court's judgment which assesses costs on the State, and affirm the remaining portion of the trial court's judgment.

SHEPARD, C.J., and DeBRULER, J., concur.

DICKSON, J., concurs, with separate opinion.

GIVAN, J., dissents, without separate opinion.

DICKSON, Justice, concurring.

While agreeing with the majority opinion, I would further find that the verdicts were *not* inconsistent.

In the plaintiffs' claim against Toby Parker, the jury verdict found that Parker and Dan Snyder were both "at fault," but that Snyder's fault was greater than 50% of the total "fault" involved in the incident. Record at 689–90. The verdict did not explain the nature of the "fault" that the jury attributed to Snyder. It was not necessarily that of contributory negligence. It could have been incurred risk.

This claim was presented under the Indiana Comparative Fault Act which defines "fault" to include various acts or omissions, expressly including negligence and assumed or incurred risk, among others. Ind.Code § 34-4-33-2(a). The jury was instructed that if it found Parker at fault, it must then determine whether Snyder was also at fault. Record at 81. They were told that the term "fault" includes various acts and omissions, including negligence and assumed or incurred risk. Record at 83. Furthermore, final instruction no. 17 stated:

> When a person knows of a danger, understands the risks involved and voluntarily exposes himself to such danger, or when a guest voluntarily joins in or assents to wanton or willful misconduct by an operator of a motor vehicle, that person is said to have "incurred the risk" of injury.

Record at 89.

By its verdicts both finding Parker partially at fault and determining the State to be liable, the jury concluded that conduct both by Parker and by the State participated in causing Snyder's injuries. It was entirely possible that the jury verdict attributing "fault" to Snyder was based upon a determination that such fault consisted of Snyder's incurring the risk of Parker's driving while intoxicated, resulting in Parker's veering off the edge of the highway. However Snyder's incurred risk as to Parker's driving did not thereby necessarily also incur the risk of the State's negligent highway construction and maintenance

causing a dangerously high "lip" preventing the vehicle's safe return. Such highway condition danger was not shown to be a risk known to the plaintiff and to which he voluntarily exposed himself.

Furthermore, as the jury was informed, the State's affirmative defense was that of contributory negligence, not incurred risk. Record at 79. Conduct amounting to incurred risk does not necessarily constitute contributory negligence. William Prosser, *Handbook on the Law of Torts* § 68, at 440–41 (4th ed. 1971).

In reviewing a claim of inconsistent verdicts, the reviewing appellate court indulges every reasonable presumption in favor of the legality of jury verdicts. *Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d 651.

It is logically and legally consistent here to interpret the jury verdicts as indicating that the Snyders were unsuccessful in their claim against Parker because Dan Snyder incurred the risk of Parker's driving, but that Snyder did not commit contributory negligence to bar his claim against the State. The jury verdict with respect to the Snyders' claim against Parker was not inconsistent with the verdict in their claim against the State.