**HOMEHEALTH, INC., Redwood Motel, Gandhi Lingamneni and Lezbit Lingamneni, Appellants–Plaintiffs,**

v.

**NORTHERN INDIANA PUBLIC SERVICE COMPANY, Jackey Don Williams and Viking Freight Systems, Inc., Appellees–Defendants.**

No. 76A03–9109–CV–283.

Court of Appeals of Indiana, Third District.

Oct. 15, 1992.

John C. Grimm, Timothy A. Miller, Grimm & Grimm P.C., Auburn, for appellants-plaintiffs.

James J. Shea, Arthur G. Surguine, Jr., Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for appellees Don Williams and Viking Freight Systems, Inc.

John F. Lyons, John M. Clifton, Barrett & McNagny, Fort Wayne, for appellees-defendants.

GARRARD, Judge.

This is an appeal from a judgment in favor of NIPSCO and Jackey Don Williams, et al. We affirm.

FACTS AND PROCEDURAL HISTORY:

Gandhi and Lezbit Lingamneni are the sole stockholders of Homehealth Inc. Homehealth acquired the Redwood Motel on October 11, 1985 through the assignment of a land contract from its previous owners.

The Redwood Motel receives its electrical service from Northern Indiana Public Service Company ("NIPSCO") which installed the service in 1966 or 1967. At the time the service was provided, the area over which the lines ran was dirt and tall grass sloping away from the building. The 1961 edition of the National Electrical Safety Code, applicable at the time the wires were installed, stated that wires installed over areas accessible only to pedestrians need to be only 12 feet high.

Sometime after electric service was provided to the motel, the area behind the motel was paved. After the Lingamnenis acquired ownership, Mr. Lingamneni painted lines on the pavement for truck parking. In order for trucks or other vehicles to park in back of the motel, they would need to pass under the electric wires along the west side of the motel. Mr. Lingamneni did not measure the height of the power lines and did not consult the Department of Transportation height regulations before allowing truck traffic to the rear of the property.

On the night of May 14, 1987, Jackey Don Williams ("Williams") stopped at the Redwood Motel to secure a room for the evening. After registering for a room, Williams asked Mr. Lingamneni about truck parking.[1] Mr. Lingamneni directed Williams to park behind the motel and pointed out the precise route to the rear of

the building. This route took Williams around the west side of the building and directly under the wires in question. Noticing that the power lines appeared to be low, Williams went slowly under the lines and stopped while directly beneath them. He opened the cab door to his semi and shined a spotlight on the lines. The trailer cleared the lowest line by 8 inches. The truck made it under the lines without incident.

After concluding that the truck parking area was not suitable for his needs, Williams proceeded to exit the area using the same path that was shown to him by Mr. Lingamneni. This time, however, the semi did not clear the wires. As the truck moved under the lines, it snagged one of them, pulling it down and causing a fire in the motel.

On May 8, 1989, Homehealth brought suit against Williams, his employer, Viking Freight Systems, and NIPSCO for damages resulting from the fire. A jury trial was held in the Steuben Circuit Court on June 3–6, 1991, and at the conclusion of the trial, the jury entered a verdict in favor of the defendants.

Homehealth appeals and we affirm.

ISSUES:

I. Whether the trial court erred when it permitted cross-examination of Mr. Lingamneni on various issues related to those introduced by Lingamneni's counsel on direct examination.

II. Whether the trial court erred in admitting defendant's exhibits "O" and "P".

III. Whether the trial court erred in instructing the jury about premises liability.

IV. Whether there was sufficient evidence in the record to support a conclusion that Homehealth bore responsibility for the fire.

DISCUSSION:

Issue I:

■ Homehealth first contends that the trial court erred when it permitted cross-

---

1. Williams' truck consisted of a tractor and two "pup" trailers. The trailers were 13′6″ high, the industry's standard height.

examination of Mr. Lingamneni on various issues related to, but not directly explored by, Mr. Lingamneni's counsel on direct examination. We disagree.

In general, the extent to which cross-examination may be carried rests largely within the discretion of the trial court. That decision will be reversed only for an abuse of discretion which results in injury to the complaining party. *Cunningham v. Cunningham* (1982), Ind.App., 430 N.E.2d 809, 813. In order to constitute reversible error, there must exist both an erroneous ruling and prejudice. *Id.*

In this case, Homehealth suffered no injury or prejudice from the cross-examination at issue here. Where the essence of the objection is merely a question of timing, and where it does not appear that the appellant's rights were affected by the admission of the evidence upon cross-examination, any error committed was harmless. *Westfall v. Wait* (1905), 165 Ind. 353, 73 N.E. 1089, 1091. The defense in this case could have called Mr. Lingamneni and examined him as an adverse party under Trial Rule 43(B) and elicited the same evidence that was brought out on cross-examination. *Cunningham, supra* at 813. The matter is one of timing in the introduction of the evidence. Therefore, Homehealth needed to affirmatively show that the timing of this evidence prejudiced Homehealth. Homehealth provides us with no showing of prejudice in this case. Therefore, the cross-examination in this instance was not error. The court was within the bounds of sound discretion in permitting counsel to explore all the witness' testimony at one sitting, rather than requiring that he be twice called to the stand.

Issue II:

Next, Homehealth contends that the trial court erred in admitting defendant's exhibits "O" and "P". We disagree.

Exhibit "O" is a photograph of the back of the Redwood Motel taken at some point prior to the fire that occurred on May 14, 1987. This photograph shows the back of the building, some cars, and four electrical service wires running from a nearby utility pole to the motel. Prior to the introduction of this photo, NIPSCO's expert, Ralph E. Armington, testified that the photo accurately portrayed the general layout of the motel when he visited the site on July 13, 1987, with the exception of the cars and utility wires. Homehealth objected to the introduction of exhibit "O" for failure to lay a proper foundation. Specifically Homehealth stated that there was no showing as to when the picture was taken and therefore it may not be an accurate depiction of the motel prior to the fire. The trial court indicated it would overrule this objection stating that Mr. Armington had testified that the photo was an accurate portrayal of the layout in July 1987, with the exceptions noted. Homehealth then stated it had an additional objection and requested permission to ask a preliminary question before the court ruled on admitting the exhibit. It did so and then again objected for essentially the same reason set forth in its first objection. After an explanation by the trial court that the photo was introduced, not for its accurate portrayal of the motel prior to the fire, but rather for its portrayal of the general layout of the motel on July 13, 1987, (with the exception of the cars, fire damage, and the utility wires), Homehealth *withdrew* its objection.

Homehealth now contends that it was error for the trial court to admit the photo in the absence of a proper foundation. This argument is without merit.

First, a question cannot be raised on appeal unless a proper and timely objection was made in the trial court. *Chustak v. Northern Indiana Public Service Co.* (1972), 259 Ind. 390, 288 N.E.2d 149, 155. A party must object to evidence at the time it is offered into the record. *Reed v. Dillon* (1991), Ind.App., 566 N.E.2d 585, 588. A party who fails to make a timely objection normally waives his right on appeal to assert the admission of the evidence as erroneous. *Id.* at 588–89.

In this case, Homehealth withdrew its objection at the time this exhibit was offered into evidence. In so doing it waived

any objection that it may have had to the admission of this evidence.

■ Second, in order for a reviewing court to reverse a trial court, the record must demonstrate not only an erroneous ruling but also resulting prejudice. *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969, 976. Error unaccompanied by prejudice is not ground for reversal. *Lennox & Matthews & Assoc. v. Rozzelle* (1952), 231 Ind. 343, 108 N.E.2d 621, 622.

In this case, there was no prejudice to Homehealth by the introduction of a photo that merely shows the layout of the building two months after the fire. If Homehealth was concerned about the photo being used as a basis for testimony regarding the height of the utility wires, it was incumbent upon it to properly object when such testimony was offered. Indeed, such testimony was offered and no objection was made. In light of Homehealth's failure to demonstrate prejudice from the photograph as introduced, we find no error.

■ Homehealth also objects to the introduction of defendant's exhibit "P", a scale drawing of the utility wires and their heights as the witness Armington believed them to be at the time of the fire. This contention must also fail.

■ Erroneously admitted evidence that is merely cumulative in nature, thus contributing nothing to the jury's verdict, is not reversible error. *State v. Ingram* (1981), Ind., 427 N.E.2d 444, 447; *Hazifotis v. Citizens Federal Sav. & Loan Ass'n* (1989), Ind.App., 537 N.E.2d 35, 37, *trans. denied.* Any error in the admission of evidence is harmless if the same or similar evidence is submitted without objection. *Matter of Estate of Palamara* (1987), Ind. App., 513 N.E.2d 1223, 1231–32.

In this case the evidence sought to be introduced in this drawing is merely cumulative. Prior to the introduction of exhibit "P", Mr. Armington had given oral testimony concerning the utility wires, the measurements of the utility pole and connecting devises, and the mathematical formula used to compute the curvature of the wires. He testified that when he visited the site two months after the fire, he took notes, measurements, and photographs to aid him in his investigation. Mr. Armington also testified that using these measurements, the mathematical formula, and defendants exhibit "O", he was able to determine that the lowest of the four utility wires was 13'10" above the ground. Mr. Armington then testified that exhibit "P" was a depiction of what he had just described: "It depicts what you just inquired about—the lowest of the four wires between the service pole and the motel, and, in addition, the other three which were above it, all four of which I scaled on the photograph and measured at the service pole."

During this oral testimony no objection was made. Only when exhibit "P" was offered into evidence did counsel for Homehealth object. By this time the evidence contained in the exhibit was already admitted orally. Even if we could say that the admission of the exhibit was erroneous, and we decline to say so in this instance, the evidence contained therein was merely cumulative and therefore harmless.

Issue III:

■ Homehealth next contends that the trial court erred in instructing the jury about premises liability. Specifically, Homehealth contends that there was insufficient evidence to support such an instruction. We disagree.

Final instruction No. 8 reads as follows: "The proprietor of a place of business is under a duty to exercise reasonable care to make the premises safe for use by invitees or customers on the business premises. This duty includes exercising reasonable care to maintain the premises in a reasonably safe condition, an obligation to exercise reasonable care to discover possibly dangerous conditions, and to take reasonable precautions to protect the invitee.

The jury must determine in this case whether or not the plaintiff breached its duty to maintain the business premises in a reasonably safe condition, and whether it knew, or in the exercise of reasonable

care, should have known, that a dangerous condition existed on the premises.

If you find that the plaintiff in this case breached any of these obligations, then you may take that fact into consideration in determining whether or not the plaintiff was negligent." (R. 191).

█ The giving of jury instructions is within the discretion of the trial court. We will review its decision only for an abuse of discretion. *Weller v. Mack Trucks, Inc.* (1991), Ind.App., 570 N.E.2d 1341, 1343. We consider only the evidence most favorable to the appellee and any reasonable inferences to be drawn therefrom. If any evidence supports the instruction, we will uphold the trial court's giving of the instruction. *Id.* In this case, any evidence in the record or inferences therefrom that indicate Mr. Lingamneni did not exercise reasonable care to make the premises safe for invitees or customers would be enough to support this instruction.

The record in this case reveals that Mr. Lingamneni converted the back of his motel into truck parking sometime prior to the fire. He did not measure the height of the wires or consult with NIPSCO or the Department of Transportation prior to changing the use. Mr. Lingamneni promoted the use of the truck parking lot by displaying a "truck parking" sign at the motel and directed Williams to park there on the evening of May 14, 1987. In addition, the record reveals that the lowest wire supplying electricity to the motel was 13'10" above the ground, while standard truck heights are 13'6" high. From these facts we conclude that there is evidence from which the jury could conclude that Mr. Lingamneni should have known a clearance problem existed. Mr. Lingamneni nevertheless failed to make the premises safe for the truck drivers invited to his motel. This is enough evidence to support the instruction at issue here.

Issue IV:

█ Finally Homehealth contends that there was insufficient evidence to support a conclusion that Mr. Lingamneni bore more than 50% of the responsibility for the fire.

The verdict rendered by the jury in this case was rendered in three parts:

*"Step 1*

We, the jury, find that the defendant, Northern Indiana Public Service Company was not at fault. We, therefore, find for said defendant and against the plaintiff.

*Step 2*

We, the jury, find that the defendant, Jackey Don Williams, was not at fault. We also find, therefore, that the defendant Viking Freight Systems, Inc. was not at fault. We, therefore, find for said defendants and against the plaintiff.

*Step 3*

We, the jury, find that the fault of the plaintiff, Home Health, Inc. was more that fifty percent (50%) of the total fault involved in causing the fire which caused plaintiffs damages. We, therefore, find for the defendants and against the plaintiff."

(R. 208–10, 1040).

█ In general, error unaccompanied by prejudice is not ground for reversal. *Baker v. State Bank of Akron* (1942), 112 Ind.App. 612, 44 N.E.2d 257, 260, *trans. denied.* The purpose of review is to correct an erroneous result and not merely to approve or disapprove the grounds upon which it is based. *Id.* Error in conclusions of law which are not used or required as a basis for judgment is harmless and will be disregarded on appeal. Such is no ground for reversal where no prejudice results to the party complaining. *Id.*

In this case, steps 1 and 2 of the verdict rendered by the jury are all that are necessary to reach a final verdict in this case. Once the jury decided that NIPSCO, Williams, and Viking Freight Systems were not at fault, they had decided that Homehealth had not met its burden of proof on the question of liability. Any jury verdict regarding the affirmative defense in this case was superfluous. It is therefore not necessary for us to determine whether there was insufficient evidence to sustain the conclusion that Mr. Lingamneni bore more that 50% of the responsibility for the

fire, since, even if that were the case, it would not have affected the outcome.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

STATON, J., concurs.

SULLIVAN, J., concurs in result.