**BOB SCHWARTZ FORD, INC.,**
Appellant–Defendant,

v.

**Elizabeth DUNHAM, Appellee–Plaintiff.**

**No. 52A02–9305–CV–208.**

Court of Appeals of Indiana,
Third District.

March 31, 1994.

Tom F. Hirschauer, Hirschauer & Hirschauer, Logansport, for appellant.

Robert Rothkopf, Thomas L. Landwerlen, Pardieck, Gill & Vargo, Indianapolis, for appellee.

HOFFMAN, Judge.

Appellant-defendant Bob Schwartz Ford, Inc. [Dealership] appeals a judgment in favor of appellee-plaintiff Elizabeth Dunham.

The evidence relevant to the appeal discloses that on January 26, 1988, Dunham was injured in a one-car accident during which Dunham experienced steering problems and struck a tree. In 1985 when Dunham purchased the car she was driving at the time of the accident, a 1984 Reliant, she also purchased a service contract. Prior to the accident in late 1987, Dunham's vehicle was serviced at the Dealership for problems including the steering. A few days prior to the accident, the Dealership ordered a new steering unit for Dunham's car. When Dunham inquired as to the availability of a loaner or rental car, the representative of the Dealership responded that one was not available. When Dunham complained that she could not drive her car without completion of the repair work, the representative told Dunham that the car was driveable and safe.

Dunham instituted proceedings against the Dealership in July 1989. After a trial by jury during December 1992, Dunham was found to be 27% at fault and the Dealership was found to be 73% at fault. The jury placed the total damages at $250,000.00. Thus, Dunham was awarded $182,500.00. Other evidence is recounted below as is necessary to a review of the issues.

The Dealership raises several issues for review. As restated, the issues are:

(1) whether the evidence is sufficient to sustain the verdict and whether the verdict is excessive;

(2) whether the doctrine of incurred risk would bar Dunham's recovery under the Comparative Fault Act; and

(3) whether the trial court erred in submitting the verdict form to the jury over the Dealership's objection.

First, the Dealership contends that the evidence does not support the verdict in favor of Dunham and that the jury erred in fixing the Dealership's portion of fault at 73%. When reviewing a claim of insufficient evidence, this Court neither weighs the evidence nor judges the credibility of witnesses. Rather, the Court may view only the evidence and reasonable inferences therefrom which support the verdict. If substantial evidence of probative value establishes each material element of the claim, this Court will affirm the judgment. *Chaiken v. Eldon Emmor & Co., Inc.* (1992), Ind.App., 597 N.E.2d 337, 343.

The evidence establishes that in October prior to the accident, Dunham took her car to the Dealership for service. Her specific complaint was that the car would not steer properly. When the car was returned to her, the problem was not corrected. The problem became increasingly worse. The sharper the turn while steering, the more difficult it was to return the car to a straight position. Dunham returned the car for service regarding the steering problem in November and December. In mid January, just prior to the accident, Dunham took the car to the Dealership. She, the owner of the Dealership, and a mechanic test drove the car. Dunham demonstrated that after a turn, the car made a noise and would not return to a straight position without manually pulling the steering wheel. After one turn, the mechanic stated that he had observed enough. It was then determined that the steering mechanism needed to be replaced.

Because the part had to be ordered, the Dealership estimated a two-week delay in servicing the vehicle. It was then that Dunham requested a loaner or rental car. As noted above, she was assured by the Dealership representative that the car was safe to drive.

On the day of the accident, Dunham was driving to work. She was traveling slightly

under the speed limit. She slowed even further when she approached a curve. As she turned the steering wheel, she encountered the noise and the resistance earlier than usual in the turning process. After she had negotiated the turn and the road straightened, she encountered greater than usual resistance in her attempt to straighten the steering wheel. She exerted increased pressure to avoid driving off of the side of the road. The resistance then released sending the car too far in the other direction. As Dunham again attempted to pull the steering around to straighten the car, the tires hit slush on the road. The car fishtailed. The car went into a ditch and struck a tree.

Also, at trial, one of Dunham's expert witnesses testified regarding his findings upon examination of the steering unit after the collision. He noted that Dunham's description of the malfunction coupled with obvious particles in the power steering fluid should have alerted the mechanic to warn Dunham that the car was not safe to drive. Another expert concurred that based upon the information available to the Dealership, its service fell below the standard of normal care for mechanics.

The Dealership contends that its actions or omissions did not proximately cause Dunham's loss. The Dealership opines that other factors including Dunham's driving skills and the road conditions proximately caused the accident.

■ An injury is proximately caused by a negligent act or omission if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated, regardless of whether the earlier negligence concurs with other proximate causes of injury or whether another act of negligence intervenes. *McKinney v. Public Service Co.* (1992), Ind. App., 597 N.E.2d 1001, 1005. The requirement that the injury was foreseeable is directly related to the rule that an intervening cause may serve to sever the liability of one whose original act sets in motion the chain of events leading to the injury. *Id.* The determination as to what is reasonably foreseeable is not measured by the subjective opinions of those involved, but is based upon the objec-

tive standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of people. *Id.* at 1006. An injury is universally regarded as the legal consequence of an actor's negligence if the actor should have realized the conduct might cause harm to another in substantially the manner in which it is brought about. *Id.* Thus, if the intervening cause is foreseeable, the original actor cannot escape liability. *Id.*

Here, the Dealership knew or should have known the severity of the mechanical problem. In fact, the Dealership determined that the steering unit needed to be replaced. The Dealership's employee and one of Dunham's expert witnesses testified that the steering and braking systems were the two most important components in a car. The evidence supports a finding that Dunham's query regarding the safety of the car should have prompted a negative response. Also, the evidence supports a finding that an accident of the type which occurred was reasonably foreseeable.

■ The Dealership complains that the jury's assessment of fault is not supported by the evidence and that the damages award is excessive. As noted above, it is not the function of this Court to reweigh the evidence. Further, a damage award will not be reversed if it is within the scope of the evidence. *Wal–Mart Stores, Inc. v. Blaylock* (1992), Ind.App., 591 N.E.2d 624, 628. An award is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *Id.* No evidence of improper motivation appears in the record, and the Dealership offers no examples of such.

Dunham presented extensive evidence as to the events leading to the accident, the accident itself, and the extent of her personal injuries. As to her personal injuries, the evidence demonstrated that a fracture of Dunham's leg required several surgeries, including a bone graft, all of which required an extensive recuperation period. She was left with a permanent leg length discrepancy and persistent pain. Dunham must take pain

medication. Dunham is no longer able to engage in activities with her family such as dancing and shopping which she enjoyed prior to the accident. Although Dunham returned to work approximately one year after the accident, she is usually exhausted at the end of the day. Additionally, a finger broken in the accident continues to cause her pain. The damage award is sustained by sufficient evidence.

■ Next, the Dealership contends that the doctrine of incurred risk should act as a complete bar to Dunham's claim even after the enaction of the Comparative Fault Act. IND.CODE § 34–4–33–2 (1984 Supp.) defines "fault" in part as the "unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages."

That incurred risk no longer acts as a complete bar to recovery under the Comparative Fault Act was discussed in the majority opinion authored by Justice Krahulik in *State, Through Highway Dept. v. Snyder* (1992), Ind., 594 N.E.2d 783. It was noted:

"The Comparative Fault Act provides for defenses which do not necessarily duplicate those allowed in traditional common law negligence actions. This is apparent in the context of the defense of incurred risk. At common law, a plaintiff who incurred the risk was barred from *any* recovery because, having deliberately engaged in a course of conduct with knowledge and appreciation of the specific risks involved, he accepted the entire risk of injury without regard to whether he exercised due care in ·deciding to encounter the risk ... Thus, even if the defendant had breached the duty of exercising reasonable care toward the plaintiff, the plaintiff was aware of the risk of such a breach and voluntarily chose to encounter it. No recovery was allowed in such instances.

Under the Comparative Fault Act, however, plaintiff's incurred risk is considered as 'fault' and is to be compared to other fault contributing to the accident. Thus, although at common law a plaintiff would have incurred the risk of the entire accident, under the Comparative Fault Act,

the plaintiff has no longer incurred the entire risk but, theoretically, only a portion of it. Accordingly, comparing incurred risk under the Act with incurred risk at common law is a comparison of two distinct legal theories." (Emphasis in original.) (Citation omitted.)

*Id.* at 786.

Thus even if the evidence supports a finding that Dunham incurred a portion of the risk, under the Act her claim would not be completely barred.

■ Finally, the Dealership contends that the verdict form submitted to the jury did not strictly conform to the statutory requirements. IND.CODE § 34–4–33–6 (1990 Supp.) provides in pertinent part:

"The court shall furnish to the jury forms of verdicts that require only the disclosure of:

(1) the percentage of fault charged against each party and nonparty; and

(2) the amount of the verdict against each defendant."

■ The verdict forms in the present case included additional information such as a requirement that the percentages must equal 100; and that as the plaintiff, Dunham's fault must equal 50% or less to allow a verdict for Dunham. However, the Dealership asserts that the verdict forms do not comply with the statute and that the statutory language was altered in 1990 to read that *only* the two factors would appear on the verdict forms. Hence, according to the Dealership, reversible error occurred. Such is not the case. While it is true that the verdict forms did not specifically comply with the statutory language, the Dealership has not demonstrated harm resulting from the use of the forms. Generally, an error which is unaccompanied by prejudice cannot form the basis for reversal. *Homehealth, Inc. v. NIPSCO* (1992), Ind.App., 600 N.E.2d 970, 975. Reversible error necessarily entails more than merely noting that an error in the proceedings occurred without any representation as to resulting harm.

There being no finding of reversible error, the judgment in favor of Dunham is affirmed.

Affirmed.

FRIEDLANDER, J., concurs.

KIRSCH, J., concurs with opinion.

KIRSCH, Judge, concurring.

I agree with the majority on all issues. I would, however, seize the opportunity presented by the Dealership's challenge to the forms of verdict furnished in this case to address a problem which has plagued trial judges and lawyers since the amendment of the Indiana Comparative Fault Act in 1990.

The Indiana Comparative Fault Act was adopted by the General Assembly in 1983. As adopted, section 6 of the Act directed trial courts to furnish forms of jury verdicts that required the disclosure of the percentage of fault charged against each party and the calculations made by the jury to arrive at their final verdict. IC 34–4–33–6, as added by P.L. 317–1983, SEC. 1.

In 1990, the section of the Act dealing with forms of verdict was amended to provide:

"Forms of verdict; disclosure requirements

The court shall furnish to the jury forms of verdicts that require only the disclosure of:

(1) the percentage of fault charged against each party and nonparty; and

(2) the amount of the verdict against each defendant.

If the evidence in the action is sufficient to support the charging of fault to a nonparty, the form of verdict shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty."

IC 34–4–33–6. Amended by P.L. 121–1990, SEC. 10. The 1990 amendment has caused the confusion which prompts this concurrence. A literal application of the directive would prevent the trial court from furnishing a general verdict form for the defendant. Moreover, the deletion of the calculation provisions without also deleting the disclosure of the fault percentages invites the parties,

their lawyers and the court to question whether the calculations were carried out in accordance with the Act. *See, e.g., Buckland v. Reed,* (1994), Ind.App., 629 N.E.2d 1241. Plaintiffs may question whether the jury made a double deduction for fault charged to them and defendants may question whether any deduction was made. Juries, themselves, may question whether the amount of the verdict is what the plaintiff will actually receive.

In the instant action, the trial judge attempted to avoid such questions and such confusion. By the furnishing of a verdict form which provided for the disclosure of the percentage of fault and the total damages sustained by the plaintiff without regard to fault, he assumed the responsibility for the appropriate calculation. This calculation was carried out in the judgment which he entered.

In 1983, the Indiana Supreme Court amended Trial Rule 49 of the Indiana Rules of Procedure and abolished special verdicts and interrogatories to the jury. Prior to such abolition, such verdicts and interrogatories were used to test the jury's verdict. By abolishing such special verdicts and interrogatories, the Court placed its faith in juries to reach correct decisions.

I believe that IC 34–4–33–6, by directing the trial court to tender forms of verdict requiring the disclosure of the percentage of fault, directs the trial court to tender an interrogatory to the jury. As such, it is contrary to the provisions of T.R. 49.

The Indiana Supreme Court in *State, Through Highway Dept. v. Snyder* (1992), Ind., 594 N.E.2d 783, declined an invitation to treat verdict forms required by the Indiana Comparative Fault Act as a special verdict or interrogatory. That invitation should be extended once again.