Brian S. TINCHER, Plaintiff–Appellant,

v.

Brian S. DAVIDSON, Defendant–Appellee.

No. 49S05–0011–CV–00719.

Supreme Court of Indiana.

Feb. 19, 2002.

Michael L. Hanley, Daniel J. Paul, Vernon J. Petri & Associates, Indianapolis, for Appellant.

Matthew J. Jankowski, Smith, Maley & Douglas, Indianapolis, for Appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

In this comparative fault case, the trial court declared a mistrial due to repeated calculation inconsistencies in the verdict forms returned by the jury. The plaintiff appealed, alleging that the trial court erred by failing to enter judgment on the jury's general verdict and by declaring a mistrial. The Court of Appeals affirmed, *Tincher v. Davidson*, 731 N.E.2d 485 (Ind. Ct.App.2000), and we granted transfer, 741 N.E.2d 1259 (Ind.2000) (table).

When the jury was sent to deliberate in this case, the trial court provided it with alternative general verdict forms A and B, Form A finding for the plaintiff and Form B finding for the defendant. In addition, the jury was given a "General Comparative Fault Verdict Form" (hereinafter "calculation form"), which explained the comparative fault calculation method and guided the calculation by providing blanks for the percentage of fault of each party, the amount of total damages found, and the multiplication of the total damages times the defendant's fault to determine the plaintiff's recovery.

The jury twice attempted to return a final verdict. The jury first returned Verdict Form A finding for the plaintiff and

against the defendant and assessing the plaintiff's damages in the sum of "ONE HUNDRED FIFTY THOUSAND dollars, ($150,000)," Record at 221, along with the completed calculation form indicating the defendant's fault percentage to be "100%," the plaintiff's fault percentage to be "0%," the plaintiff's total damages to be "$1500.00," and the calculation showing total damages of "$1500" times the fault charged to the defendant of "100%," resulting in the plaintiff's recovery of "$150,-000," *id.* at 219–20. The trial court[1] noted the inconsistency, conferred with counsel, and then informed the jury as follows:

> There was some inconsistency in the verdict forms and it's difficult to determine what the jury intended. We're going to give you new verdict forms, ask that you go back, read the forms, and reconsider, and that's what we're going to ask you to do. And so we will give you new verdict forms and ask you to go ahead and [read] through the verdict forms. After re-reading them, decide what the verdict was intended to be, and how it was arrived at. That's the only communication I can have with you.

Record at 792–93. After further deliberations, the jury again returned a general verdict of $150,000 but revised its calculation form to indicate the plaintiff's total damages of $75,000, times the 100% fault allocated to the defendant, resulted in a plaintiff's recovery of $150,000. The judge, finding that the numbers on the jury calculation form "don't work," granted the defendant's motion for a mistrial. Record at 799–800.

We first observe that this and similar jury difficulties present difficult challenges for trial courts, particularly when the jury is not deadlocked but has reached a unanimous resolution. Here, when the first verdict was returned, the trial court, after consulting with counsel, chose to direct further deliberations and told the jury that its verdict and calculation form were inconsistent and that it should re-read and complete a new set of verdict and calculation forms. The court apparently believed that it was limited either to this communication, or to declare a mistrial and discharge of the jury. To the contrary, we would encourage trial courts to employ other and creative approaches to assist and enable juries to resolve difficulties. Justice O'Connor makes the point clearly:

> As we approach the 21st century, however, we need to make sure we do not remain so wedded to practices hailing from the 20th, or the 18th, or the 13th, that we make it difficult for juries to do their job well. It is my hope that everyone concerned with the proper functioning of our justice system will take this issue seriously, to think hard about ways in which juries can be made to work

---

1. The Court of Appeals noted in its decision: The following events occurred toward the close of this trial: while Judge Jester presided over the majority of the two-day trial, he took ill shortly before closing arguments, and Master Commissioner S.K. Reid was appointed to preside over the remainder of the trial. Commissioner Reid instructed the jury and answered the questions they submitted during their deliberation, but was required to leave the proceedings temporarily. Master Commissioner Ted Robinette was appointed to receive the first jury verdict in Commissioner Reid's absence; Commissioner Robinette returned the jury for reconsideration and further deliberations after receiving the first inconsistent verdict. Commissioner Reid returned during these deliberations, addressed the jury's questions, received the second inconsistent verdict, and ultimately discharged the jury and declared a mistrial. Judge Jester presided over the hearing on the motion to correct error.
*Tincher,* 731 N.E.2d at 486 n. 2.

better, and not to fear change simply because it is different.

Sandra Day O'Connor, *Juries: They May Be Broken, But We Can Fix Them*, FED. LAW., June 1997, at 25.

 Trial courts are required to respond to jury inquiries "as to any point of law arising in the case." Ind.Code § 34–36–1–6. In addition, our new Indiana Jury Rule 28 urges that trial judges facilitate and assist jurors in the deliberative process, in order to avoid mistrials.[2] Under appropriate circumstances, and with advance consultation with the parties and an opportunity to voice objections, a trial court may, for example, directly seek further information or clarification from the jury regarding its concerns, may directly answer the jury's question (either with or without directing the jury to reread the other instructions), may allow counsel to briefly address the jury's question in short supplemental arguments to the jury, or may employ other approaches or a combination thereof.

 The plaintiff contends that the mathematical discrepancy is of no effect as the general verdict controls. Noting that special verdicts and jury interrogatories have long been abolished by Indiana Trial Rule 49, the plaintiff argues that information outside the general verdict cannot be used to impeach the verdict and that the extraneous information should be disregarded leaving a consistent judgment.[3] The defendant urges that the trial court's discretionary grant of a mistrial was proper because the persistent differences between the jury's general verdict and its computation form constituted an inconsistent verdict that amounted to a logical absurdity.

We acknowledge a facial tension between Trial Rule 49 and the Comparative Fault Act. The rule unequivocally declares: "Special verdicts and interrogatories to the jury are abolished." T.R. 49. This rule reflects our profound respect for the right to trial by jury and the collective judgment of each jury. As Judge Kirsch noted, "By abolishing such special verdicts and interrogatories, the Court placed its faith in juries to reach correct decisions." *Bob Schwartz Ford, Inc. v. Dunham*, 631 N.E.2d 953, 958 (Ind.Ct.App.1994)(Kirsch, J., concurring). Furthermore, we have repeatedly stated that "we will not attempt to interpret the thought process of the jury in arriving at its verdict." *Mitchell v. State*, 726 N.E.2d 1228, 1239 (Ind.2000); *see also Jones v. State*, 689 N.E.2d 722,

---

**2.** The Indiana Jury Rules were adopted December 21, 2001, to be effective January 1, 2003. We see no reason, however, to postpone utilization of its discretionary reforms. Jury Rule 28 provides:

> If the jury advises the court that it has reached an impasse in its deliberations, the court may, but only in the presence of counsel, and, in a criminal case the parties, inquire of the jurors to determine whether and how the court and counsel can assist them in their deliberative process. After receiving the jurors' response, if any, the court, after consultation with counsel, may direct that further proceedings occur as appropriate.

This provision was one of the products of a four-year effort involving public hearings,

written recommendations, public comment, and revisions, conducted by the members of the Citizens Commission on the Future of Indiana's Courts, by the judges who serve on the Judicial Administration Committee of the Judicial Conference, and by the Supreme Court Committee on Rules of Practice and Procedure. The Citizens Commission and the Judicial Administration Committee favored the adopted rule and the Rules Committee opposed it.

**3.** Both times the general verdict stated, "We, the jury, find for the plaintiff, Brian S. Tincher, and against the defendant and assess the plaintiff's damages in the sum of ONE HUNDRED FIFTY THOUSAND dollars, ($150,-000)." Record at 257, 261.

724 (Ind.1997); *Hoskins v. State,* 563 N.E.2d 571, 577 (Ind.1990); *Hicks v. State,* 426 N.E.2d 411, 414 (Ind.1981). With the adoption of Trial Rule 49 over thirty years ago, we curtailed the practice of asking juries to disclose the basis for their verdicts.

In contrast to the rule's prohibition of special verdicts and jury interrogatories, however, the Comparative Fault Act states:

The court shall furnish to the jury forms of verdicts that require only the disclosure of:

(1) the percentage of fault charged against each party and nonparty; and

(2) the amount of the verdict against each defendant.

If the evidence in the action is sufficient to support the charging of fault to a nonparty, the form of verdict also shall require a disclosure of the name of the nonparty and the percentage of fault charged to the nonparty.

Ind.Code § 34–51–2–11.

■ The plaintiff argues that when legislative enactments regarding court procedure are incompatible with the Indiana Trial Rules promulgated by this Court, the latter controls. *See State ex rel. Crawford v. Delaware Cir. Ct.,* 655 N.E.2d 499, 500 (Ind.1995). Whenever possible, however, we prefer to construe statutory provisions in such a manner as to permit their application consistent with our procedural rules.

In *State Highway Dep't v. Snyder,* 594 N.E.2d 783 (Ind.1992), we addressed the apparent tension between Rule 49 and the Act, holding that the "several verdict forms" required under the Comparative Fault Act were "an attempt by the legislature to prescribe a procedure by which the jury might be guided through the process of determining fault and assessing damages," but that "we will not consider such verdict forms to be special verdicts or interrogatories." *Id.* at 786. Notwithstanding the jury computation finding the plaintiff Snyder more than fifty per cent at fault with respect to his Comparative Fault Act claim against defendant Parker, we rejected the State's claim of inconsistency as to the general verdict for Snyder in his common law contributory negligence claim against the State.[4] By thus construing the statutorily required jury calculation "verdict forms" as a guide to the procedure for determining a verdict, rather than a special verdict or jury interrogatory, we avoided a conflict between the statute and the rule.

Applying *Snyder,* the Court of Appeals in *Buckland v. Reed,* 629 N.E.2d 1241 (Ind.Ct.App.1994), reviewed jury comparative fault instruction sheets that were inconsistent with its general verdict and held that the jury's general verdict "may not be impeached by the calculation sheet." *Id.* at 1244. Four years after *Buckland,* the legislature amended the Comparative Fault Act to equip trial courts to assist juries in resolving inconsistencies between a jury's verdict and its determination of total damages and the percentage of fault:

[W]henever a jury returns verdicts in which the ultimate amounts awarded are inconsistent with its determinations of total damages and percentages of fault, the trial court shall:

(1) inform the jury of such inconsistencies;

(2) order the jury to resume deliberations to correct the inconsistencies; and

(3) instruct the jury that the jury is at liberty to change any portion or por-

Ind.Code § 34–51–2–2.

---

4. The Comparative Fault Act does not apply to tort claims against governmental entities.

tions of the verdicts to correct the inconsistencies.

Ind.Code § 34–51–2–13. While trial courts must at least take these steps in the event of such inconsistencies, this statute does not supersede and limit the available alternatives. As discussed above, trial courts should facilitate and assist jurors in the deliberative process in order to avoid mistrials.

■■■ Declaration of a mistrial is generally within the discretion of the trial court. *Ward v. St. Mary Medical Center of Gary,* 658 N.E.2d 893, 895 (Ind.1995); *see also Steele v. State,* 672 N.E.2d 1348, 1350 (Ind.1996). When it is apparent to the trial court that a jury cannot agree upon a verdict after ample time for deliberation, there exists good cause to discharge the jury. *Menifee v. State,* 512 N.E.2d 142, 143 (Ind.1987); *State v. Larimore,* 173 Ind. 452, 453, 90 N.E. 898, 899 (1910); *see also* Ind.Code § 34–36–1–7(4). The Law indulges every reasonable presumption in favor of the legality of jury verdicts, and corrective action should only be taken when the verdict or verdicts are "inconsistent because [of] a logical or legal impossibility." *Indianapolis Newspapers, Inc. v. Fields,* 254 Ind. 219, 259 N.E.2d 651, 668 (1970). Moreover, mistrial is "an extreme remedy invoked only when no other measure can rectify the perilous situation." *Kavanaugh v. State,* 695 N.E.2d 629, 632 (Ind.Ct.App.1998).

In the present case, the jury first returned a general verdict accompanied by the calculation form that was internally inconsistent. The trial court then generally informed the jury that there was an inconsistency, directed it to reconsider, and provided it with new calculation and verdict forms to guide and record its determination. There was no objection to this instruction and it was in substantial compliance with Indiana Code § 34–51–2–13. After further deliberations, the jury returned a new general verdict in the same amount, $150,000.00, as its first general verdict. This second verdict was accompanied with a new calculation form that contained a mathematical calculation error but, like its first calculation form, reported that the jury determined that the defendant was 100% at fault and that the "Plaintiff's recovery" was to be $150,000.00. To the extent that there was any residual inconsistency between the second general verdict and its accompanying calculation form, we hold that trial court may have, but was not required, to make further attempts pursuant to Indiana Code § 34–51–2–13, or otherwise, to assist the jury in achieving complete consistency. The general verdict expressed the jurors' unanimous intent to award a judgment of $150,000.00 to the plaintiff.

The verdict itself was not internally inconsistent, illogical, or impossible. In accordance with *Snyder* and *Buckland,* the general verdict should not have been impeached by the calculation form. We conclude that the trial court erred in declaring a mistrial.

We remand this case to vacate the order granting a mistrial and to enter judgment on the jury's general verdict for the plaintiff in the amount of $150,000.00.

SHEPARD, C.J., and BOEHM, J., concur.

SULLIVAN, J., concurs in result with separate opinion in which RUCKER, J., concurs.

SULLIVAN, Justice, concurring in result.

I agree that the jury's general verdict here should not have been impeached by the calculation form and, as such, judgment should be entered for the plaintiff in the amount of $150,000.

I write to express my opposition to the majority's "urg[ing]" trial court judges "to

facilitate and assist jurors in the deliberative process, in order to avoid mistrials." I do not think it proper, advisable, or (perhaps) constitutional for judges to "facilitate and assist" in jury deliberations absent the consent of the parties.

I acknowledge that the majority's view reflects the spirit of our new Jury Rule 28. As the majority's opinion reflects, Jury Rule 28 (adopted over Justice Rucker's and my dissent and over the contrary unanimous recommendation of our Supreme Court Committee on Rules of Practice and Procedure) is grounded in a goal of improved efficiency—a desire to avoid mistrials. Certainly we should strive for improved efficiency. But I believe that the prejudice to the parties and our system of trial by jury of allowing—indeed "urg[ing]"—judges "to facilitate and assist" in jury deliberations outweighs any benefits of improved efficiency in this regard.

RUCKER, J., concurs.